16443

JACKSON v. WHITE
(62 S. E. (2d) 776)

*Messrs. Mayes, Featherstone & Bradford,* of Greenwood,
*for Petitioner,*

*Messrs. John E. Stansfield,* of Aiken, and *Nicholson & Nicholson,* of Greenwood, *for Respondent,*

December 12, 1950.

FISHBURNE, Justice.

This is a proceeding in the original jurisdiction of the Supreme Court, in the nature of a mandamus, to determine whether the petitioner, Clyde R. Jackson, Jr., has a *prima facie* right to the office of sheriff of Edgefield County, and to the possession of the office quarters, records, etc. The proceeding was not instituted to try title to the office, but merely *prima facie* title, and the petitioner followed the procedure recognized by this court in *Bruner v. Smith,* 188 S. C. 75, 198 S. E. 184; *Burnett v. Langston,* 164 S. C. 99, 162 S. E. 72; and *Verner v. Seibels,* 60 S. C. 572, 39 S. E. 274. However, both parties to the proceeding—petitioner and respondent—have earnestly expressed the wish that the case be decided on its merits; and, in view of its pressing importance, we have agreed to pass upon the ultimate rights of the parties.

Under the order of this court, which was issued 'in response to the petition, the respondent, Mrs. Grace R. White, was directed to show cause why she should not be required to vacate the office quarters in Edgefield County Court House provided for the use of the sheriff, and surrender all moneys, records, papers and other property pertaining to the office of sheriff of that county. She duly filed her answer and return, to which the petitioner, Jackson, served a reply, and the matter was heard before us at the November Term of the Court.

The record discloses that the respondent is the widow of A. Jack White, who was elected to the office of sheriff of Edgefield County in the general election held in 1948, for a term of four years. He duly qualified and served as sheriff until his death on November 17, 1949. Shortly after his death a conference was arranged between Mrs. White and Mr. H. H. Hill, Senator, and Horace W. Sawyer, House Representative, who constituted the legislative delegation in the General Assembly of Edgefield County—looking to the appointment of a successor to her husband to fill the office of sheriff for the unexpired term, ending December 31, 1952. This conference was held in the office of Mr. Sawyer in Edgefield on November 9, 1949, and the question of Mrs. White's appointment to fill the vacancy was fully discussed.

The Senator and House Member, although they were vested with no legal authority under the law to make such appointment, entered into an agreement with respondent to recommend her appointment to the Governor, provided that, before such recommendation should be made by them, she would resign the office of sheriff as of September 1, 1950. Thereafter, on November 28, 1949, by previous invitation and arrangement, respondent, accompanied by Senator Hill, went to the office of Mr. Sawyer, and the question of the appointment was reopened. She was again told by Mr. Hill and Mr. Sawyer that as a prerequisite to their recommendation of her to the governor for appointment to the office of sheriff of Edgefield County, she would be required to sign

in advance an undated resignation of the office effective on September 1, 1950, and that such recommendation would not be made unless she first complied with this requirement. She agreed, and thereupon signed an undated resignation addressed to the governor, reading as follows:

"Edgefield, S. C.

Governor J. Strom Thurmond,
State Capitol,
Columbia, South Carolina.

Dear Governor Thurmond:

I·hereby extend to you my resignation as sheriff of Edgefield County, S. C., to take effect September 1, 1950.

Yours very truly,

(Signed) Grace R. White

Grace R. White, Sheriff
Edgefield County, S. C."

Thereafter, on November 30, 1949, the legislative delegation having recommended her appointment to the governor, an official in the office of the governor informed respondent by long distance telephone that she would be appointed sheriff of Edgefield County to fill the unexpired term of her deceased husband, and that the necessary papers—bond, oath, etc.—were being forwarded to her for execution. These papers were duly received by her, signed and returned to the office of the governor, and on December 9, 1949, she was duly commissioned as sheriff of Edgefield County for the unexpired term.

Upon receipt of the commission, respondent took possession of the office of sheriff of Edgefield County, and from that time until now has discharged the duties of the office without interruption. She contends that the resignation, having been procured from her prior to appointment, is a nullity, and that she is entitled to hold such office under the governor's appointment and under her commission for the remainder of the term of A.. Jack White, deceased.

It appears that the undated resignation of respondent, which was signed about ten days prior to the issuance of her commission, was left in the hands of Mr. Sawyer, who, on January 18, 1950, presented it to the governor. On the same day, the governor wrote a letter to respondent, and advised her that he was accepting her resignation from the office of sheriff as of September 1, 1950. Whereupon, respondent repudiated the validity of the resignation. The governor in his statement attached to the return to the rule to show cause, states that neither before his appointment of Mrs. White as sheriff of Edgefield County, nor before receipt of her undated resignation, did he request or make any demand upon her that she resign as sheriff of Edgefield County as of September 1, 1950; and that the letter of resignation received on January 18, 1950 was the first communication which he had received from her about the matter.

Pursuant to a plan worked out by the legislative delegation of Edgefield County, applicants for the unexpired term of sheriff of Edgefield County for the period after September 1, 1950, were permitted to have their names entered and voted upon in the Democratic Primary. The petitioner, Clyde R. Jackson, Jr., received a majority of the votes cast, and was declared the nominee of the party. It is conceded that this primary was merely a permissive arrangement to test public sentiment, and under the law could not be followed by a general election. However, on October 3, 1950, the governor, assuming that a vacancy existed, appointed the petitioner, Clyde R. Jackson, Jr., as sheriff of Edgefield County to fill the unexpired portion of the term of A. Jack White, deceased, from September 1, 1950, and commissioned him on October 6, 1950. As heretofore stated, respondent never relinquished the office or its quarters, and Jackson was never allowed to assume its duties under his purported appointment.

Article V, Sec. 30 of the State Constitution, reads in part as follows: "The qualified electors of each County shall elect

a Sheriff and Coroner, for the term of four years, and until their successors are elected and qualified  *  *  *."

Code Section 3474 provides: "Sheriff—Vacancies.—In the event that a vacancy shall, at any time, occur in the office of sheriff in any county of this State, whether from death, resignation, disqualification, or other cause, the Governor, except in Berkeley County where such appointment shall be made upon the recommendation of a majority of the legislative delegation shall have full power to apopint some suitable person, who shall be an elector of such county, and who, upon duly qualifying, according to law, shall be entitled to enter upon and hold the office until the next general election for county sheriffs, and shall be subject to all of the duties and liabilities incident to said officer, during the term of his service in said office."

The main and controlling question presented to the court is whether one may validly resign a public office before appointment thereto, and prior to the taking of the oath, the giving of the required bond, and entering upon the discharge of its official duties. This question must be answered in the negative.

In our opinion, the respondent soundly argues, under the facts of this case, that the commission issued to her by the governor as sheriff of Edgefield County for the unexpired term of her deceased husband, A. Jack White, entitled her to hold this office under the law until the full expiration of such term.

A person elected or appointed to, and in the possession of, any public office, and performing the duties connected therewith, may tender his resignation at pleasure. Before he can resign, however, he must have accepted the office, as acceptance is necessary to the full possession and responsibility of an office. *Smith v. Moore,* 90 Ind. 294.

"A person cannot resign an office to which he has not been elected or appointed. since the word 'resignation' im-

plies that the person resigning has been elected or appointed to the office from which he resigns * * *." 43 Am. Jur., Sec. 169, Page 25.

▪ Hence, one who has been elected or appointed to an office cannot resign it until the time has arrived when he is entitled by law to possess it, has taken the oath, given the required bond, and entered upon the discharge of its duties. It is generally held that every attempt to resign an office before the officer has qualified and entered upon the discharge of its duties, is abortive and ineffectual. *Miller v. The Board of Supervisors,* 25 Cal. 93; *People ex rel. Dibelka v. Reinberg,* 263 Ill. 536, 105 N. E. 715, 717, L. R. A., 1915-E, 401, Ann. Cas. 1915-C, 343; *Dolphin v. Mayor and Council of Town of Kearny,* 116 N. J. L. 58, 181 A. 644.

The principle under discussion is well illustrated in the case of *Dolphin v. Mayor and Council of the Town of Kearny,* 116 N. J. L. 58, 181 A. 644. We will not recite the facts, but it is there stated:

"That Chairman Brookes before his induction into office required the prosecutor to sign in blank a resignation from an office he did not hold. After the resignation had been signed, Councilman Brookes, who was then named to the water committee, nominated prosecutor to the office of water purveyor. The obtaining of a resignation before appointment is obviously detrimental to the public interest. The town had fixed a term of office to insure an independent official. A resignation given before appointment even though not recalled, if valid, clothed a member of the council with a power of summary removal, a power not granted by ordinance and not to be sanctioned in a government of law.

* * * *

"It seems immaterial that in the present case the resignation was undated, or that Councilman Brookes had not taken office when he received the document. The vice in the arrangement was that if the resignation was valid, Brookes, who shortly became a councilman and chairman of the wa-

ter committee, obtained the power to summarily remove an independent officer of the town.

\* \* \* \* \*

"No case we can find holds that there is a limitation upon the power of an incumbent to resign from an office held. The limitation is upon the power to exact a resignation before a citizen has become an officeholder and exists to prevent designing persons from defeating the public will. The mere circumstance that Brookes did not hold office, when he procured the resignation, is immaterial. The vice in the situation was that Brookes sought to obtain an advantage that was not his under the law."

In the case just quoted from, the resolution accepting the resignation was set aside.

Of like import is the case of *People ex rel. Dibelka v. Reinberg*, 263 Ill. 536, 105 N. E. 715, 717, L. R. A., 1915-E, 401, Ann. Cas. 1915-C, 343. In that case it was held that where a mayor authorized to appoint a Board of Education procured undated resignations from his prospective appointees, the resignations, though not recalled by the appointees after the appointment, were ineffectual. The court said:

"The authorities do not appear to be numerous upon the question, as in the nature of things such a question would rarely arise, but all the authorities we have been able to find hold a man cannot resign an office before he is an officer. Mechem on Public Officers (section 410) says: 'Upon the principle that one cannot resign what he does not yet possess, it is held that one who has not been elected to a public office cannot resign the same, or, if elected, cannot resign until the time has arrived when he is entitled by law to possess the same and he has taken the oath and given the required bond and entered upon the discharge of his duties.' 23 Am. & Eng. Ency. of Law, 421, *In re Corliss*, 11 R. I. 638, 23 Am. Rep. 538, and *Miller v. Board of Supervisors of Sacramento County*, 25 Cal. 93, are to the same effect. In our judgment the rule announced in these authorities is

sound, but if no authority could be found upon the question it would seem the only conclusion which could be reached is that a man cannot resign an office to which he has not been elected or appointed. It was never contemplated that where the law conferred the power to appoint, but not to remove, the power to remove might be conferred by requiring a person, before appointment, to place his resignation in the hands of the appointing power. Such a paper is invalid when signed, and lapse of time cannot render it valid."

And to the same effect is 67 C. J. S., Officers, § 55b, Page 227; Annotation, 36 Am. St. Rep., Page 524; *State ex rel. Young v. Ladeen,* 104 Minn. 252, 116 N. W. 486, 16 L. R. A., N. S., 1058.

The case at bar is different from the case of *State ex rel. Jernigan v. Stickley,* 80 S. C. 64, 61 S. E. 211, 128 Am. St. Rep. 855, where the Intendant of the Town of Port Royal tendered his resignation to the Town Council after his election and qualification. And it is also different from cases like *Mimmack v. United States,* 97 U. S. 426, 24 L. Ed. 1067, where an Army Officer, already holding his commission, tendered his resignation to a superior officer for use if he should again become intoxicated while on duty.

The governor was not informed of the nature of the resignation until after his appointment of respondent, but to all intents and purposes, under the particular facts of this case, the legislative delegation of Edgefield County was in reality the *alter ego* of the appointing power. It was upon their recommendation that the appointment of respondent was promptly made. And without the resignation the recommendation would not have been made.

We do not wish to be understood, however, as animadverting upon the action of the delegation in seeking in good faith to obtain the sentiment of the people of Edgefield County in the selection of a sheriff to fill a portion of the unexpired term of the deceased sheriff. But under the law and the facts, there was no vacancy to fill.

It follows from what we have said that respondent, Grace R. White, is now, and has been since her appointment by the governor, the lawful sheriff of Edgefield County, and is entitled to hold this office until the expiration of the term to which A. Jack White, the deceased sheriff, was elected. We hold that the undated resignation signed by her before her appointment and qualification, is void and ineffective; and that at the time of the appointment of the petitioner there was no vacancy in the office of sheriff of Edgefield County to be filled; and that such appointment is void.

BAKER, C. J., and STUKES, TAYLOR and OXNER, JJ., concur.