## Commonwealth v. Schofield

*Roger Mattes,* for plaintiff.
*James W. McNulty,* for defendant.

ROBINSON, *P.J.,* June 25, 1975 — The above action of quo warranto was heard by the court, without a jury, upon agreement of the parties under the provisions of Pa. R.C.P. 1038 and 1114. The action was brought by plaintiff-relator, W. Boyd Hughes, alleging that on February 6, 1973, he was appointed by Mayor Eugene J. Peters, of the City of Scranton, to the board of the Redevelopment Authority of Scranton for a term of five years; that he accepted the appointment, took an oath of office as such member on February 7, 1973; and that on February 13, 1975, the said

Mayor Eugene J. Peters appointed defendant, John J. Schofield, as a member of the board of said authority, although the relator's term had not expired and no vacancy existed. The relator demands ouster and exclusion of defendant, Schofield, from the office.

The answer alleges under new matter that plaintiff, Hughes, resigned as a member of the said redevelopment authority which was accepted by Mayor Peters at 12 noon on February 5, 1975. Plaintiff's reply to new matter avers that the resignation was exacted from the relator prior to and as a condition to his appointment and was of no effect.

Testimony was heard by the court sitting without a jury and from the pleadings and the evidence the following facts are found: On Wednesday, February 6, 1973, plaintiff-relator, W. Boyd Hughes, met with Mayor Eugene J. Peters in the mayor's office about 10:45 a.m. and discussed an appointment to the board of the Redevelopment Authority of Scranton to succeed a member whose term had expired. The mayor told Hughes that he needed him on the redevelopment authority because it was to be an important factor in his reelection and that a job had to be done by the authority. Plaintiff, Hughes, agreed to be appointed and the mayor called his secretary to type up an appointment, an oath of office, and an undated resignation. Mayor Peters said he was demanding and received resignations from all his appointees because some of his appointments to authorities had gone bad on him and that he wanted undated resignations to keep the appointees in line. Hughes told the mayor that such resignations were void but as a matter of loyalty he signed an undated letter of resignation.

Hughes testified he never intended to resign. The undated resignation and appointment were signed simultaneously, the appointment being conditioned upon the resignation after which the mayor administered the oath of office to Hughes. On Wednesday, February 5, 1975, after a reorganization meeting of the redevelopment authority was adjourned, the undated resignation of February 6, 1973 was accepted by the mayor at "12:00 noon" and defendant, John J. Schofield, was appointed to the authority board to succeed Hughes. The pivotal question in the case is whether Hughes' resignation under the circumstances was valid. We decided that it was not.

The general rule in Pennsylvania is that appointed officers, under article 6, sec. 7, of the Constitution of Pennsylvania,* "may be removed at the pleasure of the power by which they shall have been appointed." It has been held in a multitude of decisions that under this constitutional provision, appointed officers are removable from office at the pleasure of the appointing power even though the appointments were made for a statutorial fixed term and the statute provided for a system of rotated or staggered term.

However, in Watson v. Pennsylvania Turnpike Commission, 386 Pa. 117, 125 A.2d 354 (1956), it was held that article 6, sec. 7, of the Pennsylvania Constitution must be considered in connection with article 6, sec. 1, which provides that, "All officers, whose selection is not provided for in this Constitution, shall be elected or appointed as may be directed by law" and the court ruled that where

---

* Articles and sections of the Constitution are cited as presently numbered.

the legislature creates a public office it may impose such term and limitation with reference to appointment or removal as it sees fit. It has been since settled that where the legislature creates an agency with statutorily fixed terms with staggered expiration dates, the legislature intends that the appointees to the office are not to be removed at the pleasure of the appointor. See Naef v. Allentown, 424 Pa. 597, 227 A.2d 888 (1967). The rationale of the decision in Watson v. Pennsylvania Turnpike Commission, supra, applies to the Urban Redevelopment Law of May 24, 1945, P.L. 991, 35 P.S. §§1705-1706, and the construction to be placed thereon: Commonwealth ex rel. Hanson v. Reitz, 403 Pa. 434, 170 A.2d 111 (1961).

In Bowers v. Pa. Labor Relations Board, 402 Pa. 542, 167 A.2d 480 (1961), the court held where the legislature creates an administrative agency and provides that its members shall be appointed for fixed terms with staggered expiration dates, the intent thereby evidenced is that such members are not removable by the grantor at his pleasure. It is clear that upon the appointment of the plaintiff, Hughes, he was not thereafter removable at the pleasure of the appointor.

In Schluraff v. Rzymek, 417 Pa. 144, 208 A.2d 239 (1965), Mr. Justice Roberts, in a searching dissent, said on the subject:

"The whole trend of modern governmental structure has been to insure, particularly in quasi-judicial offices, independence and freedom from homage to the appointing power. To avoid unwholesome implications of daily dependence upon the pleasure of the appointing power requires that such control be removed whenever possible. Surely, this is in the public interest which the

Legislature sought to advance by mandating fixed terms of office for appointees."

It is quite evident that one who holds his office only during the pleasure of another, cannot be depended upon to maintain an attitude of independence against the latter's will: Humphrey's Executor v. United States, 295 U.S. 602, 55 S. Ct. 869 (1935).

Since the legislature specifically provided in the Act of May 24, 1945, P.L. 991, that the authorities created thereunder "shall in no way be deemed to be an instrumentality of such city or county, or engaged in the performance of a municipal function" and are empowered and constitute a public body "exercising public powers of the Commonwealth as an agency thereof" and provided staggered terms for the authority members, the legislative intent is clear that the appointees to the authority were to be independent of the pleasure and free from the control of the appointing power. It follows that any scheme designed to thwart the will of the legislature in this respect is unlawful.

Generally, a municipal officer has the right to resign his office and may do so at his will or pleasure although in some jurisdictions the resignation must be accepted to be effective. However, in order for a resignation to be effective it is necessary that the officer shall have taken his office. Where a mayor authorized to appoint a board of education procures undated resignations of prospective appointees, the resignations are without effect and their acceptance after the appointment does not vacate the office, since a man cannot resign an office before he is an officer: 56 Am. Jur. 2d, Municipal Corporations, §304; People ex rel. Dibelka v. Reinberg, 263 Ill. 536, 105 N.E. 715, 19

A.L.R. 39, 46 (1914). In Dolphin v. Mayor and Council of Kearney, 116 N.J.L. 58, 181 Atl. 644 (N.J. 1935), the court held that a resignation given before appointment clothing a member of council with the power of summary removal, a power not granted by law, is not to be sanctioned (a) because the appointee was not an officer when he resigned, and (b) the practice was against public policy. So, too, in Jackson v. White, 218 So.C. 311, 62 S.E. 2d 776 (So. Carolina, 1950), where on the death of a sheriff before the expiration of his term his widow was appointed to fill the vacancy after she was required to sign an undated resignation, the resignation was void since she possessed no office to resign from at the time. The subsequent acceptance of such a resignation does not vacate the office: 63 Am. Jur. 2d, Public Officers, Resignations and Abandonment, §§161, 165; 67 C. J. S. Officers, §55(b). While there may be some instances where under special facts an undated resignation may be given for proper purposes in good faith and will be enforced: Pollock v. City of Philadelphia, 42 D. & C. 127 (1941); it was held in Geis's Appeal, 341 Pa. 413, 19 A.2d 368 (1941), that where an undated resignation has for its purpose the avoidance of the effect of lawful procedure, such as the civil service laws, the resignation so obtained is illegal and invalid.

The resignation in this case is invalid (a) since the record amply demonstrates that the appointment and resignation were simultaneously signed by the appointor and appointee and the oath of office had not yet been administered, the relator could not resign an office he did not occupy; and (b) because the purpose of the resignation was to

circumvent the intent of the legislature that the authority and its members be independent of and free from domination by the appointing power and, as such, illegal and violative of public policy.

Both appointor and appointee here were willing participants in an unlawful arrangement to circumvent the intent of the legislature. Should that affect both resignation and appointment? The parties were in pari delicto and if the arrangement was purely private the law would strike it down. Illegal agreements cannot be enforced by either party against the other: 17 Am. Jur. 2d, Contracts, §216.

There is, however, an exception to the general rule that an illegal agreement will not be enforced where the public interest will be better served by granting rather than denying redress; the public interest is paramount even though the actors are in pari delicto. To hold the appointment valid would, in effect, render the undated resignation valid, thus thwarting the legislative intent. See 17 Am. Jur. 2d, Contracts, §222.

In 15 Williston, Contracts (3d ed.), §1787, it is stated:

"Occasionally, there may also be cases where, in spite of both parties sharing in the illegality of an transaction, public policy will be best served by rescission, even though the result is to permit recovery by a guilty party; for example, if failure to rescind will affect not only the parties to the transaction but will injure the public."

Restatement Contracts §601 states the broader rule that enforcement or rescission of an illegal

contract, whichever is appropriate, is to be allowed. This rule was applied in Philadelphia v. Rosin's Parking Lots, 358 Pa. 174, 56 A.2d 207 (1948), where refusal to enforce an illegal contract would prejudice taxpayers for whose benefit the law rendering the contract illegal exists. We are mindful that Hughes participated in the operation of the Redevelopment Authority of Scranton for two years and to declare his appointment invalid, ab initio, could precipitate serious consequences.

The Urban Redevelopment Law of May 24, 1945, P.L. 991, 35 P.S. §1705 et seq., was enacted for the benefit of the general public and provided for independence of the municipal authorities and freedom from domination by the appointing power. The illegal use of the undated resignation in this respect is therefore condemned and the appointee freed from homage to the appointor.

It follows from the foregoing that plaintiff, Hughes, since February 6, 1973, has been the lawful appointee to the Redevelopment Authority of Scranton and has the right to and is entitled to hold office until the expiration of the term of his appointment. We hold the undated resignation signed by Hughes before his appointment and qualification, and exacted as a condition of his appointment, to be void and of no effect; that at the time of the appointment of defendant, John J. Schofield, no vacancy existed in the membership of the Redevelopment Authority and the appointment of Schofield was void. Defendant is subject to a judgment of ouster.

Now, June 25, 1975, the court, therefore, finds in favor of plaintiff-relator, W. Boyd Hughes, and against defendant, John J. Schofield, as hereinabove stated.