## Watson v. Pennsylvania Turnpike Commission.

118

Argued May 21, 1956. Before STERN, C. J., JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

reargument refused October 5, 1956.

Thomas C. Egan, with him Harry Polish, for plaintiff.

*Harrington Adams,* Deputy Attorney General, with him *Arthur A. Maguire,* General Counsel, Pennsylvania Turnpike Commission, and *Herbert B. Cohen,* Attorney General, for defendants.

OPINION BY MR. JUSTICE JONES, June 25, 1956:

This matter is before us on plaintiff's complaint, defendants' separate answers and a stipulation of facts. The action is in mandamus and was instituted in the Court of Common Pleas of Dauphin County. It was pending there when, because of the evident public importance of the issue involved and the desirability of a conclusive decision thereon at the earliest possible date, the Attorney General, representing all of the defendants, requested us by petition to certiorari the record here for our original and final disposition. Counsel for the plaintiff having joined in the Attorney General's request, a special certiorari was accordingly issued. The case has since been ably argued before us by respective counsel. The material facts which gave rise to the question of law involved are undisputed and may be briefly stated.

The plaintiff, David E. Watson, was appointed on March 4, 1952, by the then Governor of the Commonwealth as a member of the Pennsylvania Turnpike Commission for the term expiring on June 4, 1961. The appointment was duly confirmed by the Senate. The appointee was sworn in as a member of the Commission and thereupon assumed the discharge of the duties of his office. On or about December 7, 1955, the other members of the Turnpike Commission (being the individual defendants herein) excluded the plaintiff from all meetings of the Commission and divested him of all authority to perform any official acts for or on behalf of the Commission as a member thereof. They averred that they had so acted because, on December

6, 1955, the Governor, acting in reliance on the authority vested in him, as the appointing power, by Article VI, Section 4, of the Constitution of Pennsylvania and, in the absence of any other provision in the law relating to the removal of a Commissioner, had removed the plaintiff from office and had given written notice thereof to the plaintiff who had acknowledged in writing his receipt of the notice. On December 20, 1955, the plaintiff instituted the present action in an effort to obtain a judgment against the defendants requiring them to accord to him the duties, rights, privileges and emoluments of a commissioner for the term for which he was appointed and also a money judgment against the Turnpike Commission for the amount of his unpaid salary from December 1, 1955.

The sole question involved is whether the Governor had the power under the Constitution and laws of the Commonwealth to remove from office, at his pleasure, a member of the Pennsylvania Turnpike Commission during the fixed term of office for which he was appointed and confirmed.

Article VI, Section 4, of the State Constitution provides, inter alia, that "Appointed officers, other than judges of the courts of record and the Superintendent of Public Instruction, may be removed at the pleasure of the power by which they shall have been appointed." Article VI, in one or another of its provisions, has been before this court a number of times.

In *Bowman's Case*, 225 Pa. 364, 74 A. 203 (1909), which was concerned with a legislatively prescribed method of removing, in a certain contingency, justices of the peace—an elective office which, as this court there noted, the legislature did not create and could not abolish—it was held that the legislatively prescribed method of removal was unconstitutional, being

in conflict with that portion of Article VI, Section 4, which provides for the removal of *elected* officers. Although an incumbent of a legislatively created office was not involved in *Bowman's Case,* supra, the plain implication of this court's opinion is that the constitutional provisions for the removal of elected or appointed officers are exclusive and prohibitory of any other method, which the legislature may deem better, *only* where the office is a constitutional one. The opinion concluded with the words that "though others filling purely legislative offices may be without the constitutional provision as to removal, [a constitutional officer] is clearly within it."

However, a few years later, in *Commonwealth v. Hoyt,* 254 Pa. 45, 98 A. 782 (1916), where the removal of the incumbent of a legislatively created office (viz., county inspector of weights and measures) was involved, this court affirmed per curiam a ruling of the court below that the legislature was without power to prescribe a method for the removal of such an officer other than the method provided in Article VI, Section 4, of the Constitution. The fallacy inherent in the lower court's reasoning in the *Hoyt* case is obvious. While the opinion discussed at considerable length several constitutional provisions, it failed even to mention, let alone consider, Article XII, Section 1, of the Constitution which provides that "All officers, whose selection is not provided for in this Constitution, shall be elected or appointed *as may be directed by law* . . ." (Emphasis supplied). As was to be expected, the holding in the *Hoyt* case was impliedly but nonetheless effectively overruled a decade later.

Thus, in 1927, in *Milford Township Supervisors' Removal,* 291 Pa. 46, 49-50, 139 A. 623, after observing that "Township supervisors not being 'provided for in this Constitution' (of 1873), article XII, section

1, says they 'shall be elected or appointed as may be directed by law' ", this court declared that "A necessary implication from this provision . . . is that [the legislature] had the right to provide that their election or appointment should be for a definite or an indefinite term, absolutely or conditionally, and this might be set forth in a single section, or in two or more sections, which, of course, would be construed together. . . . It follows, if a fair construction of the statute, providing for their election or appointment, results in the conclusion that, under it, they were only intended to be conditionally elected for a specified term, that effect must be given to the legislative intent, *notwithstanding the provisions of article VI, section 4,* for not otherwise can they 'be elected or appointed, as may be directed by law' " (Emphasis supplied).

Then followed *Weiss v. Ziegler,* 327 Pa. 100, 104, 193 A. 642 (1937), where the foregoing statement from *Milford Township Supervisors' Removal* was quoted with approval, Mr. Justice LINN adding "But that provision [referring to Article VI, Section 4] must be read in connection with other provisions in the Constitution. Article XII, section 1, provides 'All officers, whose selection is not provided for in this Constitution, shall be elected or appointed as may be directed by law. . . .' The authority so conferred to provide for the election or appointment of other officers necessarily involves and implies legislative power to annex conditions of tenure. The legislature may very well say that it is desirable that certain officers should be appointed but, for reasons which it deems sufficient, they should not be subjected to removal at pleasure and, if so minded, the legislature may of course provide for such officers, the Constitution containing no provision to the contrary." No extended reasoning is required to make plain that

legislatively annexed conditions of tenure may determine the method of removal of an appointee of the related legislatively created office.

In like connection, our late Brother STEARNE, in *Commonwealth v. Beattie*, 364 Pa. 572, 574-575, 73 A. 2d 664, quoted with approval from both *Weiss v. Ziegler* and *Milford Township Supervisors' Removal*, supra. And, in *Marshall Impeachment Case*, 360 Pa. 304, 309-310, 62 A. 2d 30, Chief Justice MAXEY said with reference to the *Milford Township* case, "we held that if an office is the creature of the Legislature, the latter can establish a method for the incumbent's removal." For a well-considered editorial note, entitled Removal of Public Officers in Pennsylvania: The Constitutional Provisions, see 99 Univ. of Pa. Law Review 829, 837-840.

It is therefore established in this State beyond respectable controversy that, where the legislature creates a public office, it may impose such terms and limitations with reference to the tenure or removal of an incumbent as it sees fit. There is nothing in the Constitution prohibiting such action while, on the other hand, Article XII, Section 1, expressly admits of it. Of course, where the legislature, in creating a public office, imposes no terms or limitations on the duration of an incumbent's tenure or the mode of his removal, the method of removal prescribd by Article VI, Section 4, of the Constitution applies: See *Marshall Impeachment Case*, supra, and *Commonwealth v. Beattie*, supra.

The question, then, as to whether the tenure or removal of an appointee of a legislatively created office has been so conditioned by the legislature as to exempt the incumbent from removal by the Governor at his pleasure, under his constitutional power, is one

of intent to be gleaned from the statute creating or regulating the office.

The Turnpike Commissioners are appointed by the Governor, by and with the advice and consent of two-thirds of the members of the Senate, pursuant to the Act of May 21, 1937, P.L. 774 (No. 211), 36 PS §652a et seq. But, the Act expressly and definitely annexed conditions to the tenure of the four appointed members of the Commission (the Secretary of Highways is ex officio the fifth member) with the result that they are not removable at the pleasure of the Governor under the power conferred on him by Article VI, Section 4, of the Constitution. Section 4 of the Pennsylvania Turnpike Act, cit. supra, provides, in presently material connection, that "The commission shall consist of five members, and the Secretary of Highways shall be a member ex officio. The four remaining members shall be appointed by the Governor by and with the advice and consent of two-thirds of the members of the Senate. . . . The appointed members of the commission shall continue in office for terms of four, six, eight and ten years, respectively, from the dates of their appointment and until their respective successors shall be duly appointed and qualified, the term of each appointd member to be designated by the Governor at the time of his appointment; but their successors shall each be appointed for a term of ten years, except that any person appointed to fill a vacancy shall serve only for the unexpired term, and any member of the commission shall be eligible for reappointment."

The purpose of the foregoing provision as to the terms of office of the Commissioners (i.e., those first to be appointed and thereafter their successors) is patent. It was designed so that, by the prescribed rotation, the terms of three of the four appointed members

of the Commission would always be current. The Act expressly provides that three members of the Commission shall constitute a quorum who, for all purposes, shall act unanimously. Were the Commissioners to be held removable at the pleasure of the Governor, the carefully expressed scheme of term rotation would be effectually nullified. If it be countered that the Governor, in appointing to a vacancy created by his dismissal of a Commissioner, would respect the spirit of the Act and appoint a successor for the balance of the unexpired term of the dismissed Commissioner, the answer is that the power so attributed to the Governor would still violate the plain intendment of the Act. He could render all of the offices vacant at one time which, obviously, the Act was specifically designed to make impossible. To urge that such a situation would never be provoked is irrelevant to the question of the power of the Governor in the premises as affected by the Act creating the office and prescribing the tenure therefor. It follows that the attempted removal of the plaintiff from his office was without warrant of law and that he must, therefore, be restored to the position.

So much disposes of the instant controversy, and we would need say nothing more were it not for the fact that an erroneous idea appears to have grown up to the effect that, in the case of a legislatively created office which has, inter alia, some legislative function to perform, the legislature is the appointive power in all such instances even though the Act creating the office provides for appointment thereto by the Governor. Indeed, this very case was argued to us mainly on whether the Turnpike Commission exercises legislative powers, the plaintiff contending that it did and the Attorney General arguing that its powers are largely executive. The fact is that the Commission exercises

some of each, and it would be difficult, if not impossible, to appraise with any reasonable degree of accuracy which function is the more extensively exercised. As stated in *Suermann v. Hadley*, 327 Pa. 190, 201, 193 A. 645, "it is difficult to draw the line between legislative, executive and judicial functions . . . ." For us to pass over the mistaken conception in silence, after it has been so earnestly pressed upon us, could lead only to future speculative uncertainty and confusion.

The error has apparently resulted from a misinterpretation of the rationale of *Commonwealth ex rel. Attorney General v. Benn*, 284 Pa. 421, 131 A. 253. In *Suermann v. Hadley*, supra, we made a direct effort to dispel the misconception when we said,—"But, appellant proceeds upon a mistaken theory as to the *Benn* case, and to carry that theory to its logical conclusion would imperil the Governor's power to remove executive appointees by broadening the definition of legislative function to include practically all governmental agencies created by the legislature."

In the *Benn* case, which arose under the Public Service Company Law of July 26, 1913, P. L. 1374, it was held that the Governor lacked power to remove from office, at his pleasure, a Public Service Commissioner who had been appointed by the Governor "by and with the advice and consent of the Senate." The Act expressly provided, with respect to the removal of a Commissioner, that "The Governor, by and with the consent of the Senate, may remove any Commissioner or any of the counsel to the commission, for inefficiency, neglect of duty, or misconduct in office . . . ." The Attorney General argued that this provision was but another method of removal in addition to the Governor's right to remove a Commissioner, at his pleasure, under the power vested in him by Article VI, Section 4, of the Constitution. However, the decision in the

*Benn* case was that the Commissioners were veritably the deputies of the legislature for the more efficient exercise of the purely legislative function of regulating public service companies; that the legislature was the real appointive power, the Governor merely acting as a convenient agent of the legislature in nominating them; and that, in the Act of 1913, supra, the legislature evidenced an intention to retain control over the removal of the Commissioners when it provided that they could be removed by the Governor by and with the consent of the Senate for cause. It seems plain enough that, had the legislature intended that the Governor, as the designated appointor of the Commissioners, could also remove them *at his pleasure* by virtue of Article VI, Section 4, of the Constitution, the provision prescribing the method of their removal for cause would in practical effect be a superfluity.

The Public Service Commission is a legislative instrumentality performing principally and predominantly the legislature's exclusive function of exercising the sovereign police power in the regulation of public service companies with respect to their rates and services: cf. *Suermann v. Hadley,* supra. And, day in and day out, the Commission exercises such power. Thus, the *Benn* case was truly *sui generis* because of the Public Service Commission's special relationship to the legislature as its continuing and active agent. The legislature was not, therefore, to be deemed to have abdicated to the Governor control of the removal of its deputies from their exercise of the State's police power, in relevant regard, which only the legislature or its authoritatively designated agent, the Public Service Commission, was competent to exercise. We note, in passing, that the Public Service Company Law of 1913 likewise provided for a rotation in the terms of office of the Commissioners which was not referred to in the

opinion in the *Benn* case, being unnecessary to the decision.

Nor does *Commonwealth ex rel. Smith v. Clark*, 331 Pa. 405, 200 A. 41, cited in the plaintiff's brief, support the proposition that the Governor lacks power to remove a gubernatorial appointee to a commission, legislatively created, merely because it has duties to perform some of which are legislative in character. The members of the Delaware River Joint Commission in the *Clark* case, who were held not to be removable at the pleasure of the Governor under Article VI, Section 4, were so positioned because they had been expressly appointed *by the statute* which superseded prior legislation under which they had first been appointed by the Governor. Stated otherwise, the legislature actually made the appointments and, of course, the Governor was powerless to remove such appointees at his pleasure. The mention in the opinion for this court in the *Clark* case that "The Commission has duties that are legislative in character" was merely an incidental refutation of the appellee's assertion that the Commission's duties were exclusively executive. The appellee's argument was that the legislature could not create a commission with such duties "and then . . . name the individual members thereof." All that the reference to the Commission's legislative functions was intended to show was that the appellee's contention was based on a controverted distinction which did not control the decision.

The record herein will be remanded to the court below for the entry there of the judgment which we are about to pronounce. It is unlikely that a formal writ of execution will need be issued.

The defendant members of the Pennsylvania Turnpike Commission are ordered and directed to accord forthwith to David E. Watson, the plaintiff, the duties,

rights, privileges and emoluments of a member of the Commission for the term expiring June 4, 1961, and the Commission is ordered and directed to pay to the plaintiff so much of his salary from December 1, 1955, as remains unpaid at the time of his restoration to office; the costs of this proceeding to be borne by the Commission.

---

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

On April 4, 1952, Governor John S. Fine, acting under the authority of the Act of 1937, May 21, P. L. 774, appointed David E. Watson as a member of the Pennsylvania Turnpike Commission for a term expiring on June 4, 1961. On December 6, 1955, Governor George M. Leader, acting under the authority of the Constitution of Pennsylvania, Article VI, Section 4, dismissed David E. Watson as a member of the Pennsylvania Turnpike Commission. The majority of this court have in today's decision reinstated David E. Watson to the Pennsylvania Turnpike Commission. I dissent from that action because it runs counter to the crystalline-clear language of the Pennsylvania Constitution which says: "All officers shall hold their offices on the condition that they behave themselves well while in office, and shall be removed on conviction of misbehavior in office or of any infamous crime. *Appointed officers, other than judges of the courts of record and the Superintendent of Public Instruction, may be removed at the pleasure of the power by which they shall have been appointed.* All officers elected by the people, except Governor, Lieutenant Governor, members of the General Assembly and judges of the courts of record learned in the law, shall be removed by the Governor for reasonable cause, after due notice and full hearing, on the address of two-thirds of the Senate." *

---

\* Italics throughout, mine.

It was argued by the plaintiff in this case that the Governor, in appointing Watson, was merely acting as agent for the Pennsylvania Legislature on the theory that the Turnpike Commission has been assigned legislative functions by the General Assembly. The Majority very properly rejects this argument and holds that the power which appointed Watson was the power of the Chief Executive.* However, although the Majority concedes that the appointment was made by the Governor and not by the Legislature, it holds that the Governor has no power to dismiss his appointees to the Commission. The Majority points out that the authority in Article XII, Section 1 of the Pennsylvania Constitution, which confers on the Legislature the power to provide for the election and appointment of officers other than those created by the Constitution, embraces and implies legislative power to annex conditions of tenure and removal, saying: "where the legislature creates a public office, it may impose such terms and limitations with reference to the tenure or removal of an incumbent as it sees fit." It is not clear, however, how, after making this definitive statement, with which I thoroughly agree, the Majority can go on and hold that an application of that principle denies to the Governor in this case the power to dismiss Turnpike commissioners, when the Act which creates the Commission says absolutely NOTHING about the removal of the Governor's appointees.

The Majority would seem to argue that the silence on the part of the Legislature as to removal of Turnpike commissioners was an inadvertence. Such an argument, if at all entertained, is untenable. I believe

---

* The office of the Chief Executive is continuous, though the identity of the person holding the office changes with succeeding administrations.

that the Legislature is as much aware of the provisions of the Constitution as the Courts. There cannot be excluded from the interpretation of the Act of 1937 the proposition that the Legislature purposely omitted any reference to removal of Commission members because Article VI, Section 4 of the Constitution already provides the machinery of removal should it become necessary to use it.

If Article VI, Section 4 cannot be brought into play to remove Turnpike commissioners and the Turnpike Act itself is silent on the subject of removal, are the members of the Commission to hold office regardless of exigencies which may require re-organization and re-planning of the turnpike enterprise?

Who is to provide for a substitution if a commissioner becomes incurably ill and is thus unable to perform the duties of his office? Who is to remove a commissioner if he becomes irremediably incompetent? A commissioner may become irresponsible to the point that his services are no longer reliable or trustworthy but not of such a character as to justify criminal or impeachment proceedings. Who is to remove him? According to the Majority, no one. Such a commissioner must serve his ten years, no matter how inefficient, irresponsible and unreliable he may be, no matter how much he may impede the work of the Commission. Certainly the framers of the Constitution never intended that government should be helpless in the face of such a threat to orderly and efficient administration.

The authors of the Constitution employed, in Article VI, Section 4, language sufficiently broad to cover every contingency which could arise in the matter of officials not being faithful and responsive to their trusts. Thus, that language provided that: (1) Officers shall be removed from office on conviction of misbe-

havior in office or of any infamous crime; (2) Appointed officers, other than judges and the Superintendent of Public Instruction, may be removed by the appointing power; (3) All elected officers (except Governor, Lieutenant Governor, members of General Assembly and Judges) are to be removed by the Governor for cause, on address of Senate.

A member of the Turnpike Commission cannot be removed under the above designated Category 1, if he did not commit a crime. He may not be removed under Category 3, since he is not an elected official. If removal is indicated, his case must fall in Category 2. If the Legislature did not intend Category 2 to include all officers, short of two classifications, why did it except the Judges and the Superintendent of Public Instruction?

Present-day political scientists, well-intended academicians, and philosophical jurists may believe that the machinery of Article VI, Section 4 is not a good machinery but they did not sit in the Constitutional Convention of 1873 and cannot speak for those who framed the organic instrument of our Commonwealth. Neither can they launch constitutional amendments except through constitutional procedure.

There is nothing in the Act of May 21, 1937 which indicates that the Legislature intended that the members of the Turnpike Commission were to be immune from dismissal, regardless of misconduct. inefficiency or refusal to cooperate with other government officials equally charged with responsibility in carrying forward the business of government and in protecting the welfare of the people. The Turnpike Commission is not a bombproof shelter in which officials may hide away from the responsibility which must guide and control all other officers of the Commonwealth.

The Legislature never intended that the Turnpike Commission should have a perpetual existence. When all its financial obligations will have been liquidated, the Turnpike will belong to the people who shall utilize all its services without the payment of tolls. It would be strange indeed that the Turnpike Commission should be so closely integrated with the various departments of our State government, and particularly the Highway Department, and yet be beyond the control of the State. It would be bizarre indeed that an enterprise which is eventually to become a part of the Commonwealth could be run by individuals not responsible to the power of the Commonwealth which appointed them, that same power being charged with protecting the welfare of the people who will be the owners of the Turnpike. The enabling Act of 1937 specifically makes the Commission an instrumentality of the Commonwealth: "The commission is hereby constituted an instrumentality of the Commonwealth, and the exercise by the commission of the powers conferred by this act in the construction, operation and maintenance of the turnpike shall be deemed and held to be *an essential governmental function of the Commonwealth.*"

The Governor is charged by the people of the Commonwealth with establishing the executive and administrative policy of our state government. The Turnpike Commission is an important part of that government, exercising many executive and administrative functions which require the supervision of the Governor himself and the Department of Highways. The bonds which its officers must supply in guaranteeing faithful performance of their duties require the approval of the Governor. The bonds which are issued by the Commission to obtain funds with which to carry on its work must be signed by the Governor. The Department of Justice must approve applications by the Commission for the

appointment of viewers in connection with the condemnation and acquisition of land. In the construction of highways and bridges, the approval of the Department of Highways is required. All construction work done on highways and bridges by the Commission must be accomplished under the supervision of the Department of Highways which must also approve contracts and agreements appertaining to such construction. When the Legislature provided for extensions of the turnpike it provided also that the new locations had to have the approval of the Department of Highways and the Governor.

It must be apparent from all this that no governmental activity on Capitol Hill in Harrisburg is more intimately a part of the administrative and executive departments of the State than the activities of the Turnpike Commission.

The highways of the Commonwealth are the arteries of its existence. If a member or members of the Turnpike Commission should, through incompetence, recklessness or indifference, injure the main artery, someone must be found who can immediately apply the tourniquet by dismissing the person or persons causing the damage. According to the Majority, the only power that can render the imperative surgical attention in such a situation is the Legislature. But the Legislature has made no provision for emergencies of this character.

When the Legislature created the Turnpike Commission, it inevitably had to consider the manner of appointment of its members, the length of their term of office, and the manner in which they could be removed, in the event the welfare of the State required removal before the expiration of the designated term. The Legislature placed the power of appointment in the Governor, it indicated the length of term of office,

but it said nothing about removal. If the Legislature intended to retain control over the removal machinery, a sentence or two in the Act would have assured that retention. The Legislature, however, purposely made no mention of a removal power. The only possible explanation for that omission, as already stated in the early part of this Dissent, is that the Legislature realized that Article VI, Section 4 of the Constitution always stands ready to meet any dilemma which calls for immediate action in the way of dismissals. Hence, there was no necessity to legislate on the matter of removal.

In pursuing any given policy in the spheres of finance, welfare, health, highways, banking, mining and so on, the Governor must have as aides individuals who will cooperate and work with him. If, between the Chief Executive and his Department heads, there should arise differences and controversies of such a nature as to be irreconcilable, the Governor has the duty of taking such action as will guaranty a smoothly working administration dedicated to the needs of the people. In such a situation, substitutions in any involved department may be imperative. No one can decide the need for such substitution better than the Governor. If it be said that that power may be abused, then it must be said that any power in government may be abused. The safety valve lies in the fact that in our form of government, the Chief Executive is responsible to the people, and there is no need to fear that he will or can be indifferent to that responsibility.

It requires no great imagination to conjure up a state of facts where the intervention of the Governor is required to save a situation from becoming chaotic. Something akin to that deplorable condition of affairs aroused the concern of the whole motoring public only recently. The situation was well described in an edi-

torial which appeared in the Philadelphia Bulletin on May 25, 1956, of which I take judicial notice. The editorial reads as follows: "Motorists who drive the Pennsylvania Turnpike at the familiar rates today may appropriately salute the Governor as they pass the Harrisburg East interchange.

"Mr. Leader's prompt grab of the reins did more than merely hold up the announced toll rise that would have bitten the passenger car driver severely while letting the big trucks roll more cheaply.

"By using his influence on two of the three Turnpike Commissioners and appointing a fourth on an interim basis to tilt the scale, the Governor has turned the lights on the whole toll road situation.

"The Commission has not been in the habit of doing much explaining to the customers; only to the bond holders. Its decision to lure more truck traffic by a sweeping readjustment of tolls may have been the proper course. But the manner in which it was done, with virtually no attempt to explain, had the certain effect of arousing resentment on a grand scale.

"As a result of the Governor's prompt assertion of leadership, the asserted need for toll revision will now be aired at a public hearing. If truck traffic needs to be encouraged at the expense of the private car driver, the representatives of the latter at least will have a chance to argue about it.

"There is further promise that Turnpike doings will in the future be conducted with a reasonable concern for the public's right to know what's going on.

"The incident illustrates the perils in the authority type of government, as well as the ways in which these can be overcome by a public official really responsible to the public—in this case the Governor."

The Authority type of government referred to in the Bulletin editorial is one that requires constant surveil-

lance, and the only department of government that can properly exercise that surveillance is obviously the Executive Department. Any needed remedial action might eventually have to come from the Courts, but in the first instance it would be the responsible appointing power that would have to apply a needed tourniquet.

The Majority Opinion devotes a great deal of discussion to pointing out what the Legislature may do with regard to establishing conditions upon which an appointee may be removed, but it ignores what is so patent, namely, that the Legislature did *not* make any provision for removal of Turnpike commissioners. Thus, the Majority says that: "No extended reasoning is required to make plain that legislatively annexed conditions of tenure may determine the method of removal of an appointee of the related legislatively created office." But the Act of 1937 has not determined the method of removal of a Turnpike commissioner.

The Majority quotes from the *Marshall Impeachment Case,* 360 Pa. 304, 309, where Chief Justice MAXEY said: "if an office is the creature of the Legislature, the latter can establish a method for the incumbent's removal." But the Legislature here did not establish a method for the removal of Turnpike commissioner incumbents.

The Majority says, as already quoted: "where the legislature creates a public office, it may impose such terms and limitations with reference to the tenure or removal of an incumbent as it sees fit." But the Legislature did not impose limitations with reference to the "removal of an incumbent."

The Majority admits that: "where the legislature, in creating a public office, imposes no terms or limitations on the duration of an incumbent's tenure or *the mode of his removal,* the method of removal prescribed

by Article VI, Section 4, of the Constitution applies."
With that admission, this Court should enter judg-
ment in favor of the defendants because the Legislature
did not prescribe a "mode of removal" of Turnpike
commissioners. Of course, there is obviously a distinc-
tion between the normal expiration of a term and a
mode of removal. No one speaks of a person who
leaves his office at the expiration of his term as having
been removed from office.

The Majority says that: "Were the Commissioners
to be held removable at the pleasure of the Governor,
the carefully expressed scheme of term rotation would
be effectually nullified." The Majority then proceeds
to give the obvious reply to that observation by saying
that the Governor could, of course, appoint a successor
for the balance of the unexpired term of the dismissed
Commissioner and thus still retain the expressed
scheme of term rotation. But, after the Majority gives
this clean-cut answer to its own observation, it contin-
ues to debate with itself by saying that the Governor
"could render all of the offices vacant at one time
which, obviously, the Act was specifically designed to
make impossible." I doubt that such a situation would
arise and the Majority almost admits the improbability
of such an occurrence. But it goes on to say that it is
irrelevant whether such a situation would ever be pro-
voked. I do not see how such a discussion is irrelevant.
The Majority can not advance an indicated situation
as a result of its own discussion and then, after a
spirited auto-debate, declare any further discussion on
the subject to be irrelevant.

Unless the Legislature has clearly provided for the
removal of the gubernatorial appointees it is simply in-
controvertible that the provisions of Article VI, Section
4 of the Constitution must apply. In *Milford Township
Supervisors' Removal*, 291 Pa. 46, this Court very

clearly stated: "The question is now squarely raised, and we hold, therefore, that, although article VI, section 4, is not limited to what are frequently termed constitutional officers, it is not applicable where the legislature, having the right to fix the length of a term of office, has made it determinable, by judicial proceedings, *on other contingencies than the mere passage of time.*" In that case, the office of Township supervisor was involved, and the Act provided for a term of six years, but it also stated that if any of the supervisors "refuses or neglects to perform his duties, the court of quarter sessions may declare the office vacant and appoint another in his stead, to hold office during the term of the officer deposed." This Court accordingly held that ". . . we must assume, therefore, that the legislature intentionally made the term of six years a conditional one, *which should end when a breach of duty was adjudged in the way specified.*" There is a vast difference, however, between that provision and the wording in the Turnpike statute. In the latter statute the Commissioners' terms are not conditioned on anything but *the mere passage of time.*

In *Commonwealth ex rel. Vesneski v. Reid,* 265 Pa. 328, we held that where there was no legislative provision on the subject, municipal officers could be removed only under the circumstances prescribed by Article VI, Section 4, of the Constitution.

And in *Commonwealth ex rel. Bunch v. Beattie et al.,* 364 Pa. 572, we stated: ". . . If the Legislature in creating the office did not provide the causes and manner for removal it is conceded that under Article VI, section 4, the incumbent could be removed at the pleasure of the board . . ."

There is no dearth of authority on the subject of the applicability of Article VI, Section 4 of the Constitution to a situation of the kind before us in this case.

In *Commonwealth ex rel. Kelley v. Clark,* 327 Pa. 181, 188, this Court said: "That the constitutional method of removal provided in Article VI, section 4, *is exclusive and prohibitory of any other mode* which the legislature may deem better or more convenient *is no longer open to question* (citing cases), *except where the legislature in creating the office prescribes a different method."* The Legislature in the instant case did not prescribe a different method.

In *Marshall Impeachment Case,* 360 Pa. 304, this Court said: "In Commonwealth ex rel. Vesneski v. Reid et al., 265 Pa. 328, 108 A. 829, we held that if the office is a legislative office only and if the Legislature has not provided a different method of removal from office, the constitutional method of removal must be followed." The Legislature in the instant case did not provide for a different method of removal from office.

In *Weiss, Appellant v. Ziegler et al.,* 327 Pa. 100, 104, we said: "The legislature may very well say that it is desirable that certain officers should be appointed but, for reasons which it deems sufficient, they should not be subjected to removal at pleasure and, if so minded, the legislature of course provide for such officers, the Constitution containing no provision to the contrary." But here the Legislature did not believe that the Turnpike commissioners should not be "subjected to removal at pleasure" of the appointing power.

The Constitution of Pennsylvania, the laws of this State, the particular statute under consideration here, the precedents of this Court, the logic of the situation, the impelling necessities of the day, the need for harmonization in the work of the Turnpike Commission,— all demand that the Governor of the Commonwealth not be impeded in pushing forward the plans and the hopes of the people of Pennsylvania in the bright destiny of this highway, which has been termed, because of

its beauty, utility, and rapidity of transportation, the "Dream Highway."

Because I believe that this decision of the Majority will act as a partial barrier thrown across this "Dream Highway," I dissent.