## Young v. Scarazzo

*Alvah M. Shumaker* and *Charles Dlugokenski*, for plaintiff.

*James L. Scarazzo, Jr.*, for defendant.

HENDERSON, J., February 18, 1963.—Plaintiff herein, by a companion case in which an order was filed this date, instituted an action in mandamus against the City of New Castle, the mayor, the councilmen, the city controller and the city treasurer on February 9, 1962, requesting a declaration that she is the lawful city solicitor for the City of New Castle and asking that

she be permitted to carry out such duties and be entitled to such salaries and fees as are consistent therewith.

Preliminary objections filed by defendants, on the grounds that her action would not lie in mandamus but should have been brought in quo warranto, have been sustained.

On May 26, 1962, this action was brought under an "Agreement For Amicable Action And Case Stated In Quo Warranto" in which it was agreed that the following are the facts of the case:

1. The city is a third class city and the provisions of the Third Class City Code of June 23, 1931, P. L. 932, art. XVI, sec. 1601, as amended, were cited.

2. Orville Brown, Esq., was appointed city solicitor, effective the first Monday of May, 1960, and ending the first Monday of May, 1964, and he died shortly after he began his duties in office.

3. On September 13, 1960, plaintiff was unanimously appointed by city council to fill out the unexpired term of Orville Brown, deceased.

4. Plaintiff is a member in good standing of the bar of Lawrence County, Pennsylvania, has been admitted to practice before the Supreme Court of Pennsylvania, and maintains an office for the practice of law in New Castle, Pennsylvania. She duly qualified and performed the duties of her office.

5. Following the municipal election of November of 1961, the newly elected members of the city council of the City of New Castle took office on the first Monday of January, 1962.

6. Thereupon, plaintiff was asked by three members of city council to resign, which request she refused claiming tenure of office until May of 1964.

7. On February 6, 1962, a majority of members of city council by a three to two vote passed a resolution dismissing plaintiff as city solicitor and appointing Joseph Solomon, Esq., as her successor who subsequent-

ly took his oath of office and began to serve as city solicitor.

8. Plaintiff filed her complaint in mandamus, previously mentioned herein, at no. 33, March term, 1962, miscellaneous docket.

9. Defendants filed preliminary objections thereto, these being in the nature of a demurrer.

10. In an effort to avoid procedural questions, plaintiff brought this action as a companion case to the mandamus action.

11. Joseph Solomon, Esq., resigned as city solicitor on March 13, 1962.

12. City council by a three to two vote appointed James L. Scarazzo, Jr., Esq., as city solicitor on March 27, 1962, and he immediately took his oath of office and has since been serving in that capacity.

13. The sole issue of the case is whether "the City Solicitor of a third class city holds office for a term of four years as prescribed by the statute or whether the City Solicitor hold office merely at the pleasure of City Council."

14. Plaintiff claims that under the Third Class City Code and the Constitution of Pennsylvania, the office of city solicitor is a four-year office while defendant claims that the city solicitor of a third class city in the Commonwealth of Pennsylvania holds office at the pleasure of city council, the appointing power.

15. If plaintiff is entitled to recover, judgment is to be entered in her favor, together with costs, and if defendant is to recover, judgment is to be entered in his favor, together with costs.

16. The respective parties reserve the right to appeal as in other cases from the decisions of the court.

The resolution passed by city council on February 6, 1962, reads as follows:

"BE IT RESOLVED, That the Council of the City of New Castle hereby terminates the employment of

Marjorie A. Young as the City Solicitor effective forthwith pursuant to the power granted to City Council in Third Class City Code, Art. IX, Section 35901, in which City Council is given the power of appointment and dismissal of city officers and employees, and in pursuance to the Constitution of the State of Pennsylvania, Art. 6, Section 4."

The provisions of the Third Class City Code under which city council terminated plaintiff's employment as city solicitor read as follows:

"The council of each city shall, on the first Monday of May, one thousand nine hundred and fifty-two, and on the first Monday of May every fourth year thereafter, or as soon thereafter as practicable in each of said years, appoint a city solicitor, who shall be learned in the law and admitted to practice in the Supreme Court of the Commonwealth, and shall maintain an office in the city. He shall serve for a term of four years from the said first Monday of May and until his successor is qualified. He shall receive a fixed annual salary to be provided by ordinance. He shall give lawful bond to the city, with a surety or other company authorized by law to act as surety, to be approved by Council, in such sum as they shall by ordinance direct, conditioned for the faithful performance of his official duties. Vacancies in said office shall be filled by council for the unexpired term": Act of June 23, 1931, P. L. 932, art. XVI, sec. 1601, as amended by the Act of June 28, 1961, P. L. 662, sec. 16, 53 PS § 36601.

Article VI, section 4, of the Constitution of the Commonwealth of Pennsylvania reads as follows:

"All officers shall hold their offices on the condition that they behave themselves well while in office, and shall be removed on conviction of misbehavior in office or of any infamous crime. Appointed officers, other than judges of the courts of record and the Superintendent of Public Instruction, may be removed at the pleasure of

the power by which they shall have been appointed. All officers elected by the people, except Governor, Lieutenant Governor, members of the General Assembly and judges of the courts of record learned in the law, shall be removed by the Governor for reasonable cause, after due notice and full hearing, on the address of two-thirds of the Senate."

The question to be determined is whether a city solicitor appointed under the facts set forth above can be relieved of office at the pleasure of the city council at any time prior to the expiration of the four-year term for which the appointment was made.

The attorney for plaintiff argues to this court that for this purpose a city solicitor should be considered in the same light as the superintendent of schools since the superintendent of schools and the city solicitor have in common the factors of required professional schooling, required experience and the exercise of quasi-judicial functions as distinguished from mere clerical duties. Plaintiff further argues that under the Statutory Construction Act, the court should presume the constitutionality of the terms of office prescribed by the Third Class City Code for its city solicitor.

The portion of the Third Class City Code upon which plaintiff relys heavily reads as follows:

"He shall serve for a term of four years from the first Monday of May and until his successor is qualified."

Plaintiff's position is that this is a legislative mandate for a four-year term and that the Supreme Court of the Commonwealth expressly upholds the right of the legislature to grant tenure of office in public employment and cites the case of Weiss v. Ziegler, 327 Pa. 100, 104, 193 Atl. 642 (1937), for this proposition. That was a case in which plaintiff was appointed district superintendent of schools and the school code then in effect prescribed a four-year term. In this case we

find that Mr. Justice Linn on behalf of the court recites that article VI, section 4, of the Constitution providing for removing officers from office must be read in connection with article XII, section I, which provides:

"All officers, whose selection is not provided for in this Constitution, shall be elected or appointed as may be directed by law ..."

He then states that the legislature has power, when providing for the election or appointment of officers not provided for in the Constitution, to annex conditions of tenure and specifically states that the legislature may very well provide that such officer shall not be subject to removal at pleasure. No such provision prohibiting removal at pleasure is found in the section of the Third Class City Code which provides for the appointment of a city solicitor.

Plaintiff also cites Watson v. Pennsylvania Turnpike Commission, 386 Pa. 117, 125 A. 2d 354 (1956); Bowers v. Pennsylvania Labor Relations Board, 402 Pa. 542, 167 A. 2d 480 (1961); and Commonwealth ex rel. Hanson v. Reitz, 403 Pa. 434, 170 A. 2d 111 (1961). The Watson case cited above holds that the authority in the legislature to provide for the election or appointment of public officers also implies legislative power to annex conditions of tenure; and then Mr. Justice Jones for the majority holds as follows (p. 123):

"It is therefore established in this State beyond respectable controversy that, where the legislature creates a public office, it may impose such terms and limitations with reference to the tenure or removal of an incumbent as it sees fit ..."

In the Watson case, the court then goes on to hold that, under the act creating the Pennsylvania Turnpike Commission, the terms and limitations set forth dealing specifically with calendar rotation of the members of the commission were such terms and limitations as to exempt this from the article VI, section 4 provision

governing removal at the pleasure of the appointing power.

In Bowers v. Pennsylvania Labor Relations Board, 402 Pa. 542, 167 A. 2d 480 (1961), Mr. Chief Justice Jones in construing the Watson case has specifically held that the terms and limitations imposed by the legislature in that case dealt specifically with the staggered expiration dates of the board members, in the following language (p. 551) :

"The legislature has shown that, when it creates an administrative agency and provides that its members shall be appointed for fixed terms with staggered expiration dates, the intent thereby evidenced is that such members are not removable by the appointor at his pleasure."

We find in the case at bar no fact situation regarding the staggering of expiration dates for different members on the same board or commission as would bring this case within the rule of the Watson case. The Bowers case cited above deals with Pennsylvania Labor Relations Board and the staggering of the terms of the membership thereon and is, therefore, held to be governed by the Watson case.

Reference to Commonwealth ex rel. Hanson v. Reitz, 403 Pa. 434, 170 A. 2d 111 (1961), does not give us a clear statement of the facts of the case. However, it dealt with an urban redevelopment authority created under the law of May 24, 1945, P. L. 991, 35 PS §§1705-1706, which is a legislative enactment providing for five authority members appointed for fixed terms with staggered expiration dates. This again would place that case in the same category as the Watson and Bowers cases and differentiate it from the case at bar.

In considering these last three cases cited by plaintiff, it is interesting to note that Buell v. Union Township School District, 395 Pa. 567, 150 A. 2d 852 (1959), this being another case dealing with this problem, was

decided after the Watson case and prior to the Bowers and Hanson cases. The Buell case was decided contra to those three cases and was not cited in any one of the three. A reading of the Buell case indicates that it was not a case dealing with the removal of a public official from an administrative board or authority where the board or authority members were appointed to fixed terms of office with staggered expiration dates, but rather dealt with the removal of the secretary and treasurer of a third class school district. In the Buell case, the holding was to the effect that under article VI, section 4, of the Constitution, the board of school directors could dismiss the secretary and treasurer at its own pleasure even though the office had been filled for a definite term.

A reading of the Buell case, together with the Watson, Bowers and Hanson cases, indicates to this court that the Supreme Court of the Commonwealth does draw a distinction between the cases dealing with the appointment of a single public official for a definite term and cases dealing with the appointment of a public official to an administrative board, where the legislature has provided that the board appointments are specifically created in such a fashion that the members hold overlapping terms of office. Since the case at bar, in the opinion of the court, falls into the classification of cases represented by the Buell case rather than Watson, Bowers and Hanson cases, we feel that the case is governed by the determination of the Buell case.

The only Pennsylvania cases which have been cited to us or which we can find dealing with the removal of a solicitor from office as a solicitor for a municipality are the cases of Ulrich v. Coaldale Borough, 53 Pa. Superior Ct. 246 (1913), and Commonwealth ex rel. Foreman v. Hampson, 393 Pa. 467, 143 A. 2d 369 (1958).

The Ulrich case was an assumpsit case by the former borough solicitor, who had been removed from office, against the borough for salary as borough solicitor. Judge Morrison, who wrote the opinion for the court, held that (p. 252):

". . . The office of borough solicitor created by the Act of April 25, 1907, P. L. 103, is not a constitutional office and that act when read in connection with the constitutional provision, art. VI, sec. 4 . . . leaves the matter in the same situation as if the Act of April 25, 1907, contained the proviso that nothing herein contained shall be construed to prevent the borough council from removing such solicitor at their pleasure." (cases cited).

In this case we find that the Act of April 25, 1907, P. L. 103, which was the borough code then in effect, provided for the election of a borough solicitor and fixed his term of office as a three-year term. This legislative enactment was the same general type enactment as that section of the Third Class City Code involved in the case at bar.

Plaintiff takes the position, both at argument and in her brief, that the holding of the Ulrich case is not controlling here in that the case was decided on different grounds. It is true that that case was decided on a question of the effectiveness of an ordinance, but we find that the court specifically ruled in its opinion that the defective ordinance was not the only determining factor of the case. This ruling is in the following language (p. 253):

". . . In our opinion there are two controlling reasons why the court below did not err in refusing to take off the compulsory nonsuit: First, the appellant claimed under an ordinance which never went into effect. Second, if the appellant was duly appointed and qualified as borough solicitor for a term of three years, the appointing power, the borough council, could remove him

at pleasure, and this was actually done by action of the council early in March, 1908."

We hold in the case at bar that the second reason given in the Ulrich case controls the case at bar, even though it was dictum, as is pointed out in the case of Commonwealth ex rel. Foreman v. Hampson, 393 Pa. 467, 143 A. 2d 369 (1958). This was an action in quo warranto to question the right of defendant to serve as county solicitor, and the case was decided on the basis of residency requirements which have no bearing on the case at bar. However, the court there stated:

"The opinion expressed in Ulrich v. Coaldale Borough . . . that a borough solicitor is an appointed officer within the meaning of Article VI, Section 4, of the Constitution is not only a dictum but is irrelevant to the question with which we are presently concerned . . ."

By its own language, this statement is dictum, and nowhere in the law do we find that the second holding of the Ulrich case as quoted above has ever been specifically overruled.

We, therefore, have two contrary statements from two cases, each being only a dictum. If there were nothing further in the law, these holdings would not be of much help. However, as has been set forth above, a contrasting of the Buell case with the Watson, Bowers and Hanson cases would indicate that the Supreme Court of the Commonwealth has now adopted the theory of the Ulrich case, rather than the cited statement from the Foreman case. We shall do the same.

With regard to plaintiff's argument that the office of city solicitor should be put in the same category as that of the superintendent of public instruction, we find that by analogy to the Rules of Statutory Construction we need only point out that the framers of the Pennsylvania Constitution chose not to do so, and we must, therefore, find their intention to be that the two offices should not be compared in such manner. (In this re-

gard, it is interesting to note that the proposed constitutional amendments which have been recommended by the Pennsylvania Bar Association would no longer provide that the office of superintendent of public instruction should be a constitutional office.)

It appears to the court in this case that the most important factor here involved, outside of the legal theories themselves, is a full and complete understanding of the lawyer-client relationship as we have historically known it to be throughout our law. The justification for the absolute protection of our lawyer-client relationship theory lies in each having absolute and complete confidence in the other. "The attorney-client relationship is personal, reciprocal, and confidential, is based upon a mutual trust and confidence . . .": 3 P. L. Encyc. 482, § 32. When this is substituted by a lack of trust and confidence of one in the other, either the attorney or the client has always been free to terminate that relationship, and it is unimportant to determine whether or not the lack of confidence which has developed is based on fact or fancy. The law has historically recognized this relationship to be one not to be tampered with and not to be forced upon one party without the consent of the other.

In Commonwealth ex rel. Schofield v. Lindsay, 330 Pa. 120, 198 Atl. 635 (1938), we find the following language (pp. 123-24) :

". . . To hold that city council must retain in this confidential position a clerk who for any reason is unacceptable to it would result in a disturbed municipal situation inconsistent with the efficient administration of civic affairs . . ."

If our courts can use such language as this in discussing the relationship between city council and a city clerk, we cannot then say that the relationship between city council and their solicitor, after considering the

historic sacredness of the lawyer-client relationship, should be on any lesser plane.

### Order of Court

Now, February 18, 1963, judgment is hereby entered in favor of defendant against plaintiff, together with costs.