## Roth v. McCoy

*William J. Carlin*, for plaintiff.
*Lawrence E. Brinkman*, for defendant.

BORTNER, *J.*, January 24, 1989—Plaintiff has filed a motion for post-trial relief requesting this court to vacate the decree nisi pronounced on February 29, 1988. We hereby vacate said judgment for the reasons set forth below.

In January 1986, plaintiff, Edna M. Roth, Bristol Township executive, appointed defendant, Donald B. McCoy, Esq., as township solicitor. The appointment of Donald B. McCoy by Edna M. Roth was approved by the Bristol Township Council.

Subsequently, Roth became discontented with the legal advice McCoy provided Bristol Township. As a result of their deteriorating work relationship, Roth dismissed McCoy.[1] However, a majority of council did not believe that Roth had the authority to fire McCoy without their approval. Consequently, they did not approve Roth's attempted appointments of a successor solicitor.

So despite Roth's termination of McCoy, he continued to serve and regularly submitted bills for his

---

1. On June 18, 1986, Roth sent McCoy written notice of her intent to discharge him. Later on January 14, 1987, she specifically dismissed him by correspondence.

legal services rendered to the township. Since June 1987, Roth has refused to sign any township checks in payment for McCoy's services.

Although various lawsuits were filed against Roth designed to have such bills paid, she continued to refuse payment. On May 28, 1987, Roth filed an equitable action in quo warranto[2] and seeking a declaratory judgment of her individual right as chief executive officer to fire McCoy.[3] McCoy filed preliminary objections to the complaint. Subsequently, Roth filed an amended complaint to which McCoy filed preliminary objections.[4] After Roth filed an answer to McCoy's preliminary objections to the amended complaint, she also filed a motion for a preliminary injunction.

On February 22 and 24, 1988, a hearing was held before this court on Roth's request for the preliminary injunction. The request was denied. Further, this court overruled McCoy's preliminary objections and directed the parties to be prepared for a trial on the merits.

At trial on February 29, 1988, this court granted McCoy's motion to dismiss the complaint. The court entered a decree nisi, holding that the township solicitor is immune from discretionary firing by the executive.[5]

---

2. Plaintiff's action in quo warranto was improper. The court in denying plaintiff's declaratory judgment in effect denied plaintiff's request for judgment of ouster pursuant to a writ of quo warranto.

3. Also named as defendants were each of the five members of council: Hal Saxton, Jim McCullen, David Hite, Theresa Bradley, and Carl Cini.

4. McCoy's preliminary objections to the amended complaint went before this court pursuant to Bucks County R. C. P. *266.

5. The court pointed out that the solicitor was only immune from the arbitrary firing by the executive. The court did not

On March 9, 1988, Roth filed a motion for post-trial relief requesting that the court vacate the decree nisi and enter judgment as requested in her complaint. Likewise, McCoy filed a motion for post-trial relief on March 18, 1988 requesting the court enter a decree absolute affirming its denial of Roth's request for a declaratory judgment.

The following issue is again before us: Given the enabling legislation, the Administrative Code, the First Class Township Code, the Pennsylvania Constitution and the U.S. Constitution, does the Bristol Township executive have the power to discretionarily fire the solicitor?[6]

For the reasons given hereinafter, it is now clear to us that the executive has the power to fire the solicitor at will. Since our previous analysis of the case was flawed, our decision now is to reverse ourselves and declare McCoy's position vacant by reason of firing by Roth.

In reaching our decision we began with the premise that inherent in the power of appointment is the power to fire at will.[7] The solicitor is a policy-imple-

---

address the question of whether or not the executive could fire the solicitor for cause.

6. The statutes and ordinances relevant to the determination of the issue are: the Home Rule Charter and Optional Plans Law, §101 enacted April 13, 1972 and codified at 53 P. S. §1-101 et seq; the Bristol Township Administrative Code, enacted by Ordinance no. 01-86 by the Bristol Township Council; the First-Class Township Code, P.L. 1206, Art. 1, §101, re-enacted, revised, amended and consolidated May 27, 1949 at P.L. 1955, section 1 and now codified at 53 Pa.C.S. §55101 et seq; and Article VI, section 7 of the Pennsylvania Constitution.

7. The power to remove incident to the power of appointment has been held to be indispensable in obtaining the proper administration of public affairs. 67 C.J.S. §118. A clear example is the power of the governor of Pennsylvania to fire at

menting official, such as would bring him within the scope of Article VI, section 7 of the Pennsylvania Constitution which reads in relevant part: "Appointed civil officers, other than judges of the courts or record, may be removed at the pleasure of the power by which they shall have been appointed."

The power of removal incident to the power of appointment can be limited when the legislature creates offices of fixed terms with staggered expiration dates. Such action expresses a legislative intent to take the office out of the general removal power of Article IV, section 7.[8] *Watson v. Pennsylvania Turnpike Commission*, 386 Pa. 117, 125 A.2d 354 (1951). However, where the legislature in creating

---

will any and all employees who are not constitutionally or statutorily protected. *American Federation of State, County and Municipal Employees v. Shapp*, 443 Pa. 527, 280 A.2d 375 (1971).

The power of removal incident to a sovereign power has not only been conferred by state statutes and constitutions, but there exists a long-standing rule that in the face of congressional silence all inferior officers of the United States serve at the discretion of their appointing officer. *Kalaris v. Donovan*, 697 F.2d 376 (225 U.S. App. D.C.), cert. denied, 462 U.S. 1119 (1983). The U.S. Supreme Court has held that based upon legislative construction of the Constitution, the President has the power of removal of officers appointed by him and confirmed by the Senate without the concurrence of the Senate. *Parsons v. United States*, 167 U.S. 324 (1887).

8. The court in *Watson v. Pennsylvania Turnpike Commission, supra*, held that the governor could not remove at will a member of the Turnpike Commission because such action would defeat the purpose of the act that created the office. The act prescribed the rotation of terms of appointed members so that the commission would always be current. If commissioners were removable at will, the rotation scheme would be ineffective.

See also *Commonwealth ex. rel. Sortino v. Singley*, 481 Pa. 367, 392 A.2d 1337 (1978) and *Bowers v. Pa. Labor Relations Board*, 402 Pa. 542, 167 A.2d 480 (1961).

a public office imposes no terms or limits on the duration of an incumbent's tenure or the mode of his removal, the officer is removable at the discretion of the appointing power as prescribed by the Pennsylvania Constitution. *Reiter v. Commonwealth of Pennsylvania, Department of Justice,* 43 Pa. Commw. 61, 401 A.2d 854 (1979).

In the instant case there is no provision in any of the relevant legislation which addresses or specifies a tenure for the solicitor. The relevant legislation includes the Bristol Township Administrative Code which was adopted to govern Bristol Township Administration in conjunction with the First-Class Township Code and the Home Rule Charter and Optional Plans Law, Act 62 of 1972.[9]

Pursuant to section 204 of the code, the executive has powers and duties enumerated in Act 62, the First-Class Township Code, and the Administrative Code itself. Some of the powers enumerated in section 204 include the power to appoint a managing director and department heads and also the power to remove said officials at his or her discretion. In addition, chapter 2 of the Administrative Code entitled "Township Solicitor" states in 704: "The executive shall appoint a township solicitor and set his compensation with the advice and consent of council as provided in section 524 of Act 62."[10] Since nei-

---

9. Act 62 is the enabling legislation. The residents of Bristol Township elected to be governed under the Executive-Council Plan "C" of the Home Rule Charter and Optional Plans Law and such form of government was to commence in January 1986.

10. Act 62 states in section 524 (c) that each municipality:

"[s]hall also have a solicitor who shall be appointed by the executive (mayor) with the advice and consent of council. Each department head and solicitor shall serve during the term of office of the executive (mayor) appointing him, and

ther the code nor Act 62 specifies tenure or a staggered term for the solicitor, he may be removed at the pleasure of the appointing power pursuant to Article VI, section 7 of the Pennsylvania Constitution.

Our prior decision, however, entertained a different analysis. Originally we found that the legislature must not have intended for the at-will removal of the solicitor since the code has a provision for the discretionary removal of department heads, but it is significantly silent on that question when it comes to the solicitor. Section 204 (K) of the code states that the executive has the power "To remove a managing director and department heads, at *his or her discretion*, after written notice of intention to do so to council and an opportunity to be heard. Any such removal shall become effective on the 20th day following filing of such written notice." (emphasis supplied)

We previously reasoned that the legislature demonstrated an intent to create two separate code provisions for two distinct types of township employees. The first type was the department head whose job was to follow executive policy. Since the department head implements executive policy, we found the 20-day firing clause to be a slight limitation on the executive's discretion to fire said employees at will.

On the other hand, we found the solicitor to be the second type of employee whose job was not to implement policy, but merely to provide services in a neutral manner to all sections of the government. Since there was no code provision for the discretion-

----

until the appointment and qualifications of his successor. No member of municipal council shall head a department." 53 P.S. §1-524 (c).

ary removal of the solicitor, we held that the legislature therefore did not intend the executive to fire the solicitor at will.

We now realize our distinction between the two types of employees ignored reality. A solicitor is more than a detached and neutral advisor. Due to the confidential relationship between the executive and solicitor, the solicitor occupies a position requiring great loyalty. This position, more than any other, should be vacated once the "chemistry is gone."

We draw light from the Pennsylvania Supreme Court which has recognized the importance of the confidential relationship between public officials and their municipal attorneys. In *Naef v. City of Allentown*, 424 Pa. 597, 227 A.2d 888 (1967), the city council fired the solicitor.[11] Although the appointive power differs from our case, the consequences the court sought to avoid are the same. The court reasoned that to retain a solicitor who is unacceptable to the appointive power would lead to a seriously disturbed municipal situation. *Id.* at 601, 227 A.2d at 891.

In *Ness v. Marshall*, 660 F.2d 517 (3d Cir. 1981), the court held that the city solicitor's duties define a position for which "party" affiliation (even) is an appropriate requirement. Thus the mayor could dismiss the solicitor solely because of his political affiliation.[12] The court reasoned that "[i]n relying on an

11. As authority for dismissal of the solicitors, city council relied upon the Third Class City Code which gave council the power of appointment and dismissal of all city officers. The *Naef* court held that the solicitors were thus removable at the pleasure of council under Article VI, section 4 of the Pennsylvania Constitution (now section 7). *Id.* at 598-9, 227 A.2d at 890-1.

12. Political affiliation was not the cause of McCoy's dismissal. The case clearly involved bad blood between the solici-

attorney to perform [these] functions so intimately related to city policy, the mayor has the right to receive the complete cooperation and loyalty of a trusted advisor, and should not be expected to settle for less." *Id.* at 522. The court further stated that despite the solicitor doing work requested by council, the conclusion is still the same. We fail to see why the reasoning in *Ness* is not equally apposite here.

For the reasons given above, we hereby vacate our decree nisi order dismissing plaintiff's declaratory action. We grant plaintiff's declaratory judgment and hold that the chief executive officer of Bristol Township has the power to fire the solicitor at will. For the sake of administrative order, we are declaring the vacancy as of February 1, 1989.[13]

## FINAL DECREE

And now, January 24, 1989, the court decrees that the Bristol Township executive has the power to discretionarily fire the township solicitor under the Constitution and statutes of Pennsylvania, and the Ordinances of the Township of Bristol, Pa.; that she has lawfully done so in this case whereby a vacancy exists in that office effective February 1, 1989. The executive is directed to nominate and appoint a successor with the advice and consent of the council.

---

tor and executive. Roth described her relationship with McCoy as "very adverse, it is not beneficial to the township. There are problems constantly occurring because of the lack of any viable relationship between McCoy and myself."

13. We have by an interim order, recently issued, required the payment of McCoy's bills for legal services rendered to the township in 1987.