## Dalzell, Appellant, *v.* Kane et al.

Argued February 1, 1936. Before KEPHART, C. J., SCHAFFER, DREW, LINN and BARNES, JJ.

*Wm. B. McFall, Jr.,* for appellant.

*Charles Alvin Jones,* with him *A. W. Powell,* for appellees.

OPINION BY MR. JUSTICE SCHAFFER, March 23, 1936:

It was important that this case should be disposed of with all possible dispatch; consequently we advanced it and at the close of the oral argument entered an order affirming the action of the court below in dismissing the bill. We now state our reasons for the action taken.

The Act of May 2, 1929, P. L. 1278, section 401, 16 P. S., section 401, provides that the board for selecting depositories in counties of the second class shall designate the depositories for county funds and the rate of interest to be paid by them to the county. "Such rate of interest shall not be less than two per centum calculated on daily balances." The board advertised in Pittsburgh papers for bids by qualified banks for the deposits and the rate of interest which the banks would pay thereon. None of the banks offered a rate of interest above one per centum. The board then passed a resolution designating all banks in Allegheny County, qualified to act, as depositories, fixing the rate of interest at two per centum, and sent notice of their designation and the interest rate

to all such banks. The notice requested each bank to make known whether it would accept deposits on the terms stated. All of the banks rejected the designation and refused to accept the deposits at the rate named. Thereupon the board adopted a resolution which recited that because of the condition of surplus funds prevailing in banks throughout the country, no bid had been received for the deposits, and the banks had refused to accept them and pay two per centum interest thereon, but had indicated their willingness to accept the deposits and pay interest thereon at one per centum. The resolution proceeded to designate certain banks in Allegheny County as depositories with an interest rate of one per centum and directed the county solicitor to prepare contracts with the banks in accordance with their offer for a term ending June 30, 1937. The bill in this case was filed by a taxpayer to enjoin the execution of the contracts on the ground that the board was without authority to so agree.

Did the board, notwithstanding the direction of the act that the rate of interest on the deposits should not be less than two per centum, have the power to agree to a lower rate when it was impossible to obtain that fixed by the statute? We were and are of opinion that it did.

Obviously the main purpose of the act was to secure safe depositories for the county moneys. This was more important than the interest rate. As the board could not obtain two per centum on the county's daily balances, it was confronted with the alternative of taking what it could get or receiving nothing, and with the further alternative that if the banks could not receive the deposits except under the terms of the statute, the funds would have to be put as currency in vaults adequately guarded. This would mean the nullification of the act in its entirety. Just what responsibility this would involve can be realized when it appeared, as it did, that the county's deposits run from ten to twenty-five million dollars. Furthermore, the county would have no way

of paying its current accounts except in currency. Its established practice in this respect would be completely upset.

If the law is the perfection of wisdom, it should have evolved some principle to take care of such a situation as this case presents. It has done so. When strict compliance with the terms of the written law is impossible, compliance as near as can be, under judicial sanction, is allowed. This principle was recognized by Judge END-LICH in his scholarly work on the *Interpretation of Statutes*. He says, section 441, page 627: "Enactments which impose duties on conditions are, when these are not conditions precedent to the exercise of a jurisdiction, subject to the maxim that lex non cogit ad impossibilia aut inutilia. They are understood as dispensing with the performance of what is prescribed, when performance is impossible (e) ; for the law, in its most positive and peremptory injunctions, is understood to disclaim, as it does in its general aphorisms, all intention of compelling impossibilities, and this general exception is a general rule of statutory construction." See also the same author, section 265, page 351. "It is a settled rule of construction that the legislature will be presumed to have intended what is reasonable and effectual, and not what is productive of absurd or anomalous consequences or is impossible and incapable of execution": *Foster's Petition,* 243 Pa. 92, 98.

As before stated, the main purpose of the act was to secure safe depositories for county funds. The payment of interest was secondary. We must conclude that the legislature could not have intended that, if as much as two per centum interest was not obtainable at any time, a county should be without adequate and sound banking institutions as depositories of its funds, and that it should receive no interest return on deposits if interest was obtainable only at less than two per centum. Certainly it is reasonable to conclude that what the legislature meant was two per centum, if possible, and, if

not, then the highest obtainable rate rather than nothing.

It has been suggested by appellant that the board, in designating the depositories "for a term ending June 30, 1937," failed to perform its duty in accordance with section 406 of the Act of 1929, which provides that the board shall designate banking institutions as depositories of county funds "for the term for which the treasurer is elected." The treasurer was elected for the term of four years commencing January 6, 1936, and the board designated the depositories for a term extending only to June 30, 1937. The reason for the limitation of the time was the inhibition of the Federal Reserve Act of December 23, 1913, as amended by the Banking Act of 1933, and as further amended by the Banking Act of 1935 (Act of August 23, 1935, c. 614, paragraph 324 (c), 49 Stat. 714), which renders impossible the making of any contract for interest on deposits of public funds by any member bank of the Federal Reserve System for a longer period than a time expiring two years from August 23, 1935. As the interest on deposits is paid quarterly and June 30, 1937, is the next interest paying date preceding August 23, 1937, that date was the date fixed. The impossibility of performance rule covers this situation.

It is also suggested by appellant that it does not appear that the board made any endeavor to secure depositories outside of Allegheny County. In view of a custom which has long prevailed throughout the State of depositing county moneys in the banks of the county, it would not seem reasonable to conclude that the legislature had intended that other than this should be done. The advertisement for depositories was made in Pittsburgh newspapers, which have a wide circulation outside of Allegheny County, and no outside bank bid for the deposits. The inconvenience which would result to the county from depositing its money outside its own precincts is a reason why they should not be so deposited. The funds of the county on deposit are secured by the

depositories' pledge of Federal, State or Allegheny County bonds, which are placed in safe deposit boxes in the joint control of the particular depository and the board. Because of the necessity for withdrawals, substitutions and interest collection, access to the deposited bonds must be readily convenient. Such convenience could not be had if the depositories were outside of the county.

The order heretofore made affirming the action of the court below in dismissing the plaintiff's bill is confirmed at the cost of appellant.