## Marshall Impeachment Case.

Argued October 4, 1948. Before MAXEY, C. J., DREW, LINN, PATTERSON, STEARNE and JONES, JJ.

*Francis Anderson,* with him *William A. Gray,* and *Gray, Anderson, Schaffer & Rome,* for appellant.

*Charles E. Kenworthey,* with him *Robert J. Lindsay, Jr.,* for appellees.

*Thorpe Nesbit,* for Committee of Seventy, amicus curiæ.

*Robert T. McCracken,* for Philadelphia Chamber of Commerce, Philadelphia, amicus curiæ.

OPINION BY MR. CHIEF JUSTICE MAXEY, November 8, 1948:

Proceedings, by due complaint, to remove W. Frank Marshall, the appellant, from the position of Receiver of Taxes of Philadelphia were instituted by twenty-two electors of the City of Philadelphia under Section 9 of Article IV of the Act of June 25, 1919; P. L. 581, which

provides a means of removing from office municipal officers for any corrupt act or practice. Appellant, contending that the Receiver of Taxes is a county officer, filed preliminary objections to the complaint on the ground, inter alia, that he could be impeached only by the legislature of the Commonwealth, as provided for by Section 4 of Article 6 of the Constitution of 1874. The Court below dismissed appellant's preliminary objections. This appeal followed.

Appellant denies that the Receiver of Taxes is a municipal officer and, as such, subject to the provisions of the Act under which these proceedings were instituted. The office of Receiver of Taxes was created by the Act of February 2, 1854, P. L. 21, Sec. 11 (53 PS Sec. 4831) entitled "A Further Supplement to an Act Entitled 'An Act to Incorporate the City of Philadelphia' ", under which he was made the city official to collect taxes. The history of the office of Receiver of Taxes indicates that he is a city and not a county official. Before the passage of the Act of 1854 taxes were collected by appointees of municipal officials or groups. The position was continued in Article V of the Act of 1885, P. L. 37 which was entitled "To Provide for the Better Government of Cities of the First Class in this Commonwealth", and now exists by virtue of Article XV of the City Charter Act of 1919. The three separate statutes which provide for the office of Receiver of Taxes have dealt with city government exclusively.

In support of his contention that he is a county and not a municipal officer appellant argues that the City of Philadelphia is coextensive with the County of Philadelphia, that the Receiver's jurisdiction is county-wide, and therefore, he is a county officer. He further submits that he is charged by statute with the duty of collecting taxes due the county, as well as the city, and also taxes due the school district. In *Hadley's Case*, 336 Pa. 100, 105, 6 A. 2d 874, this Court said: "The designation of the city or county treasurer by the legislature as agent

of the Commonwealth for the collection of certain taxes and fees is not the creation of a public office within the meaning of Article III, section 13, but is merely the establishment of an agency which the legislature may at any time modify or revoke."

Although the office of Receiver of Taxes was in existence prior to the Constitution of 1874, the Constitution does not designate the Receiver of Taxes as a county office. Article XIV, Section 1 of the Constitution provides: "County officers shall consist of sheriffs, coroners, prothonotaries, registers of wills, recorders of deeds, commissioners, treasurers, surveyors, auditors or controllers, clerks of the courts, district attorneys, and such others as may from time to time be established by law. . . ." Moreover, again in the Enabling Act of 1876, P. L. 13, §17, which provides "In all cases where a city containing over 300,000 inhabitants is co-extensive in boundaries with the county, all of the officers known therein as city treasurer, city controller, city commissioners, shall severally be regarded as county officers . . .", the office of Receiver of Taxes is omitted.

The appellant further argues that since the office of Receiver of Taxes was in existence prior to the Constitution, the incumbent can be removed only under the procedure prescribed by statute in effect at the time the Constitution was adopted or under the provisions of Section 4 of Article VI of the Constitution which provides: "All officers shall hold their offices on the condition that they behave themselves well while in office, and shall be removed on conviction of misbehavior in office or of any infamous crime. Appointed officers, other than judges of the courts of record and the Superintendent of Public Instruction, may be removed at the pleasure of the power by which they shall have been appointed. All officers elected by the people, except Governor, Lieutenant Governor, members of the General Assembly and judges of the courts of record learned in the law, shall be removed by the Governor for reasonable

cause after due notice and full hearing, on the address of two-thirds of the Senate." Appellant relies upon the *Georges Township School Directors Case*, 286 Pa. 129, 133 A. 223. In that case the manner of removal of a local official had been regulated by an Act of Assembly passed in 1854, and subsequently amended in 1911. It was argued that these regulations were superseded and rendered nugatory by the provisions of Article VI, Sec. 4 of the Constitution of 1873. The court denied the contention on the ground that the method specified in the Act of 1911, P. L. 309, substantially continued the method provided by the Act of 1854, P. L. 617 and held that, school directors and the laws appertaining to them were part of a system already in existence at the time of the adoption of the Constitution and not abrogated by the adoption thereof. The court further stated that since the school directors were elected public officers at the time the Constitution was adopted, they would come within the purview of the removal provisions of the Constitution were it not for the fact that a different method of removal was in effect prior to the adoption of the Constitution.

The situation in the instant case is similar to that in the *Georges Township Case*. The method of removing the Receiver of Taxes from office was provided for in Section 45 of the Act of 1854, supra, as follows: "All officers elected by the qualified voters under this act, shall be subject to removal from office on impeachment for misdemeanor in office, or other sufficient cause, on charges to be preferred by the common council, and tried by the select council, in manner prescribed by the constitution and laws of this Commonwealth, as to the impeachment by the House of Representatives, and trial thereof by the Senate; all other officers shall be subject to removal for sufficient cause, in such manner as councils may determine." Such procedure is substantially similar to the procedure set up in the City Charter Act of 1919. The Act of 1919 designates City Council, which

corresponds to the old Select Council, as the tribunal to try the impeachment. The charges are preferred by due complaint of twenty qualified electors, rather than by the Common Council, with the further provision that the matter will never reach City Council for trial unless a court is satisfied that reasonable ground exists for the complaint and unless a committee of five competent and reputable citizens after investigating the charges in the complaint finds the charge well founded. The court, speaking through Justice SADLER, in the *Georges Township Case*, stated "[If] the earlier legislation furnished a different manner of procedure in such cases, and it, or modifying acts of assembly passed since 1873, will still be effective, unless the attempt is made to depart from the provisions as then existing." The court also cited the following from White on the Constitution, page 21: " 'Subsequent constitutions have never been construed as abolishing old systems and establishing new, but rather in the light of amendments of existing law. This being so, the Constitution is not to be construed as an abrogation of existing laws, unless the intent is too clear to be mistaken, but, like amendments to the statute law, is deemed to be operative only for the future.' "

The law which defines the method of removing public officers, whether those officers were created by the Constitution or by statute, has been clearly set forth in various opinions of this Court. First, in *Bowman's Case*, 225 Pa. 364, 74 A. 203, which related to the removal from office of a Justice of the Peace, we held that "a constitutional officer, whose office the legislature did not create, and which it cannot abolish," cannot "be removed in any other way than that pointed out in the constitution for the removal of officers elected by the people."

Second, in *Georges Township School Directors Case*, supra, we held that if an office has been provided for by the Constitution but a method of removal different from the constitutional method was in effect prior to the adoption of the Constitution, such other method may still

be followed in addition to the method contained in the Constitution.

Third, in *Commonwealth ex rel. Vesneski v. Reid et al.*, 265 Pa. 328, 108 A. 829, we held that if the office is a legislative office only and if the Legislature has not provided a different method of removal from office, the constitutional method of removal must be followed.

Fourth, in *Milford Township Supervisors' Removal Case*, 291 Pa. 46, 139 A. 623, we held that if an office is the creature of the Legislature, the latter can establish a method for the incumbent's removal. The office of Receiver of Taxes of Philadelphia is an office created by the Legislature. In the case last cited, this Court, speaking through Justice SIMPSON, said: ". . . the exact question now involved . . . was mooted, but not decided, in Bowman's Case, 225 Pa. 364, 367, and, as to appointed officers, in Com. v. Benn, 284 Pa. 421, 429. It was referred to in Georges Township School Directors, 286 Pa. 129, 133-4; and, though a leaning was there shown towards our present conclusion, the case was ruled on another point. The question is now squarely raised, and we hold, therefore, that, although article VI, section 4, is not limited to what are frequently termed constitutional officers, it is not applicable where the legislature, having the right to fix the length of a term of office, has made it determinable, by judicial proceedings, on other contingencies than the mere passage of time."

In *Weiss v. Ziegler et al.*, 327 Pa. 100, 193 A. 642, which involved the question of removing from office a district superintendent of schools for certain specific causes, this Court, in an opinion by Mr. Justice LINN, after citing Article XII, Section 1 of the Constitution which provides: "All officers, whose selection is not provided for in this Constitution, shall be elected or appointed as may be directed by law . . .", said: "The authority so conferred to provide for the election or appointment of other officers necessarily involves and implies legislative power to annex conditions of tenure.

The legislature may very well say that it is desirable that certain officers should be appointed but, for reasons which it deems sufficient, they should not be subjected to removal at pleasure and, if so minded, the legislature may of course provide for such officers, the Constitution containing no provision to the contrary."

The present proceedings have merely reached the stage where the court directed the accused to appear and answer.* The order dismissing the preliminary objections and directing the respondent to file an answer is affirmed.

---

*The procedure provided by statute in a case of this kind is divided into six parts:

(1) Complaint in writing to a court of common pleas by not less than twenty qualified electors of the city.

(2) If reasonable ground appears to the court, the court directs the filing of the complaint of record and directs the accused to appear and answer.

(3) If sufficient cause is shown, the court appoints five competent and reputable citizens to investigate the charges.

(4) If at least a majority of the committee finds any charge well founded, the whole record is certified to City Council and a copy of the specifications served on the accused.

(5) City Council assembles as a court of impeachment. The president judge of the court of common pleas presides at the trial.

(6) If Council finds the accused guilty, judgment is entered accordingly and the court declares the office vacant.