## Marshall Impeachment. No. 2

*William A. Gray*, for petitioner.
*Robert J. Lindsay, Jr.*, contra.

BROWN, JR., P. J., February 8, 1949.—This proceeding to remove W. Frank Marshall from the office of Receiver of Taxes of Philadelphia instituted under

Section 9 of Article IV of the Act of June 25, 1919, P. L. 581, is now before the court on his petition by his attorneys for a rule upon complainants to show cause why the proceedings should not be quashed and the complaint dismissed.

"Complaint in writing" was made to the court "by not less than twenty qualified electors of the city, each of whom" wrote "his [or her] occupation and residence opposite his [or her] signature, charging" petitioner with various offenses, "setting forth the facts on which" the charges were "founded, supported by the oaths . . . of . . . five of the complainants according to the best of their knowledge, information, and belief", and, there appearing in the judgment of the court to be "reasonable ground for such proceeding", the court directed "the complaint to be filed of record", and granted a rule upon petitioner "returnable on a day certain, to appear and answer the same", in accordance with section 9(b), 53 P.S. §3002. Instead of answering the complaint, petitioner filed preliminary objections thereto on the grounds, inter alia, that the court did not have jurisdiction over the proceeding, that the tribunal ultimately sought to be constituted by these proceedings is disqualified because composed of persons or groups of persons preferring the charges, and that the complaint was not sufficiently specific. The court dismissed the objections and directed petitioner to file an answer. An appeal having been taken, this order was affirmed by the Supreme Court. (Marshall Impeachment Case, 360 Pa. 304.)

After the record was remitted, the rule "to appear and answer" was again made "returnable on a day certain". Petitioner filed his answer, which contained in detail denials of some, and qualified admissions of other, of the charges. Upon consideration of the complaint and answer, the court found "sufficient cause for further proceedings", in that, the necessity for ascer-

taining the facts put in issue by the answer to the complaint by means of evidence required the continuation of the proceeding, and appointed "a committee of five competent and reputable citizens to investigate the charges" contained in the complaint, in accordance with section 9(c), 53 P.S. §3003, "to make a written report to the court of the facts found by it", as provided in section 9(d), 53 P.S. §3004, to find whether "any charge made [in the complaint] is well founded", and to perform the other duties of such a committee, as specified in section 9(e), 53 P. S. §3005. Marshall Impeachment (No. 1), 66 D. & C. 325. No appeal was taken from this order.

In investigating the charges made in the complaint against petitioner, the committee has interrogated a number of witnesses, including complainants, and has received reports of auditors and others, who have examined the books and records of the office of the Receiver of Taxes. What has already been adduced emphasizes the need of this *judicial* inquiry in order that the facts pertaining to petitioner's conduct of the office can be ascertained.

The petition presently before the court summarizes the testimony of complainants taken so far, and concludes with the prayer that, "in view of the fact that none of the persons who signed the Complaint took affidavits in support thereof had the kind of knowledge, information or belief required by law but based their action solely on remote hearsay and newspaper reports", a rule be grant upon complainants "to show cause why the proceedings should not be quashed and the Complaint dismissed".

It appears from the testimony of the twenty-two complainants, five of whom swore that the facts set forth in the complaint were true and correct "according to the best of their knowledge, information, and belief", that they signed the complaint as the result

of knowledge and information obtained from written and oral reports of surveys of the office of the Receiver of Taxes made by accredited investigators, from discussions of such reports by persons who had supervised the surveys, from reports in the newspapers, and from statements made by other complainants, and belief and opinion formed after consideration of one or more of such sources. While none had immediately direct knowledge of the facts bearing on all of the charges, three were members of a committee that investigated the petitioner's office and received reports from the persons who actually made the surveys under its supervision and control.

The act does not expressly or impliedly require that complainants have direct knowledge of the facts set forth in the complaint. Section 9(b), supra, provides merely that it shall be "supported by the oaths or affirmations of *at least five of the complainants according to the best of their knowledge, information, and belief*". (Italics supplied.) Manifestly, this language means knowledge and information however acquired, whether by sight, hearing, experience or report, and confidence in the truth or reality of such matters based upon grounds insufficient to be positive thereabout.

That sources other than direct knowledge were intended is indicated by the provisions of sections 9 and 12 of the Practice Act of May 14, 1915, P. L. 483, which was in effect at the time the Act of 1919 was adopted, requiring that a statement of claim and an affidavit of defense "shall be sworn to by" the plaintiff and the defendant, respectively, "or some person having knowledge of the facts". The absence of the requirement "having knowledge of the facts" and the provision "according to the best of their knowledge, information, and belief" permit only the conclusion that a lesser degree of knowledge was meant when swearing to a complaint under the Act of 1919.

The same result is reached from a consideration of section 9(a), 53 P. S. §3001, wherein it is provided: "Municipal officers shall be liable to . . . removal from office, for any corrupt act or practice, malfeasance, mismanagement, mental incapacity, or incompetency for the proper performance of official duties, extortion, receiving any gift or present from any contractor or from any person seeking or engaged in any work for, or furnishing material to, the city, or from any incumbent or occupant of, or candidate or applicant for, any municipal office, and for wilfully concealing any fraud committed against the city". Being known to be unlawful, extortion and acts of corruption and malfeasance are committed in secret, and gifts from the persons mentioned are not received in public. Mental incapacity impliedly necessitates the opinion of medical experts. Mismanagement and incompetency for the proper performance of official duties depend upon numerous factors. Wilfully concealing fraud means intentionally hiding or withholding knowledge of fraud. It is improbable, if not impossible, that twenty, or even five, qualified electors of the city would have direct knowledge of any of such things. This obvious difficulty was resolved by stipulating that the complaint shall be "supported by the oaths . . . of at least five of the complainants according to the best of their knowledge, information, and belief", and not by a complaint made by qualified electors "having knowledge of the facts".

An analogous situation was presented in *Election Cases*, 65 Pa. 20, where section 35 of the Act of February 2, 1854, P. L. 21, 40, provided that the returns of municipal elections shall be subject to inquiry and determination upon complaint to which "at least two of the complainants shall take and subscribe an oath or affirmation that the facts set forth in such complaint are *true*", and where the oath to the complaint

read "that the facts are true *to the best of their knowledge and belief*". (Italics supplied.) The court said (at pages 30-31) : "This addition, it is asserted, lessens the strength of the oath — that the law requires the absolute truth of the facts to be sworn to, and not the best knowledge and belief of the affiants. Does the law mean absolute verity? This is the question. The intention of the lawgivers must be discovered, not only from the words, but from the object of the law, the special purpose of the oath, the nature of its subject and the character and jurisdiction of the tribunal. The object of the law is to give the people a remedy. It is their appeal from the election board to the court from an undue election or a false return. The law is therefore remedial, and to be construed to advance the remedy. The special purpose of the oath is to *initiate* this remedy—to give it the impress of good faith and probable cause. The *proof* of facts must *follow*, not precede the complaint. It is contrary to our sense of justice and to all analogy, to say that a remedy shall not begin till the case has been fully proved. The law being remedial and the oath initial only, it is not to be supposed the legislature, representing the people, intended to subject the remedy to unreasonable or impossible conditions. The remedy would be worthless and the legislature stultified. Correct interpretation will shun this result". The court then pointed out that there were essential facts that not only the two affiants but also the fifty complainants "cannot know personally"; that they "may believe, or may be credibly informed", "but they cannot know"; that "their knowledge, to be personal, must be as ubiquitous as the fraud", and that it is impossible that they "could personally know the facts necessary" for the proceeding, and concluded (on page 31) : "The case comes, then, right to this point. The oath must be made from credible information, or not at all. In the poll of such

a city the affiant cannot swear to more than to the best of his knowledge and belief. It would be an imputation on the framers of the law to think otherwise. The argument that no indictment would lie for perjury upon this form of oath is fallacious. If the act means an oath in this form, then the oath in that form is an oath authorized by law, and an indictment for its corrupt and wilful breach will lie." The reasoning of the court with respect to the facts of this case, and the conclusions reached, apply with equal force to the facts in the instant proceeding.

The action of the persons who signed the complaint was based on "credible information", information obtained from persons who had conducted and supervised investigations or surveys of the office held by petitioner (at least two made at his own request), or from written reports thereof, and not, as he contends, "solely on remote hearsay and newspaper reports", or on public rumor or common gossip. Considering the nature and character of the charges, complainants could not "swear to more than to the best of" their "knowledge and belief" (*Election Cases*, supra, 31), or, as they did, "according to the best of their knowledge, information, and belief."

The act does not require that the complainants shall have direct knowledge or swear to "the absolute truth of the facts", nor does it "prescribe the *form* of the oath" (*Election Cases*, supra, 30 and 32), or verification "upon personal knowledge as to a part and upon information and belief as to the remainder" of the complaint (Pa. R. C. P. 1024), but it does provide that the complaint cannot "be filed of record" until "in the judgment of the court there appears to be reasonable ground for such proceeding" (Section 9(b), supra); that unless "on the return-day of the rule [previously granted] the court shall find sufficient cause for further proceedings", the court

cannot "appoint a committee of five competent and reputable citizens to investigate the charges contained in [the] complaint" (Section 9(c), supra); and that such committee, if appointed, after investigating the charges, must "make a written report to the court of the facts found by it" (Section 9(d), supra), find that a charge made in the complaint "is well founded", and prepare "specifications of the charges against the accused", before the case is "transmitted to [city] council" for trial (Section 9(e), supra). By this procedure, the reliability and credibility of the sources of the complainants' "knowledge" and "information" and the basis of their "belief" can be viewed in the light of evidence pertaining to the charges, and the facts with respect to the charges can be ascertained. In such process, a municipal officer is protected from baseless charges, for, as stated by the Supreme Court (Marshall Impeachment Case, supra, 309), "the matter will never reach City Council for trial unless a court is satisfied that reasonable ground exists for the complaint and unless a committee of five competent and reputable citizens after investigating the charges in the complaint finds the charge well founded". In this respect, the authorities cited and relied on by petitioner are not pertinent, because the initial pleading setting forth a cause of action verified by affidavit was the pleading on which the case would go to trial, whereas in a proceeding under this act the case does not go to trial on the complaint but on the "specifications of the charges" drawn by a committee after investigating the charges stated in the complaint and finding them to be "well founded".

Moreover, although petitioner contends that the facts on which his present application is based appear clearly for the first time as a result of the testimony before the committee appointed by the court to investigate the charges, he did have opportunity to ascertain these

facts before filing his answer to the complaint in which he admitted that complainants "are all duly qualified electors of the City". On the original return-day of the rule to appear and answer, he filed preliminary objections to the complaint on various grounds, but he did not include the present one, as he could have done, and might well have done, because he must have conceived, if not actually known, that it was improbable, if not impossible, for some of the complainants to have direct knowledge of the facts pertaining to the various charges. An answer thereto raising issues of fact would have required evidence in order for the court to determine them (compare Pa. R. C. P. 1028c), and in this way the testimony on which he now relies would have then been presented to the court for consideration. Since the case has reached the stage where the court has appointed a committee to investigate the charges, the court is without power to quash the proceedings and dismiss the complaint. Under section 9(e), supra, this committee alone can bring the proceeding to an end before trial, and *only* by finding that no charge made in the complaint "is well founded". The court's terminating the proceeding at this point would prematurely extinguish the remedy given qualified electors by the act.

The present application is made by a petition for a rule to show cause instead of by a motion, but this is not material. Paragraphs 1 and 2 of the petition briefly set forth the status of the proceeding, and paragraph 3 contains a summary of complainants' testimony given up to the present time before the committee. Section 9(d), supra, imposes the duty upon the committee "to make a written report to the court of the facts found by it, which shall be filed of record, accompanied by the testimony taken", and section 9(e), supra, provides that in case the committee finds any charge well founded, "the court shall cause a certi-

fied copy of the whole record . . . to be transmitted to [city] council". It is apparent from these requirements that "the testimony taken" by the committee is part of the record in this proceeding, and, therefore, can be considered by the court. If the rule to show cause were allowed, all averments of fact in the petition would "be taken as admitted for the purposes of the rule . . ., unless an answer thereto is filed by" complainants (Rule *251(e) of the Courts of Common Pleas of Philadelphia; compare Pa. R. C. P. 209), and if an answer were filed denying or qualifying the allegations in the petition, there would be no need for the court's taking evidence for the determination of the issues of fact thus raised, because the evidence has already been taken. Accordingly, the allowance of the rule would not serve any valid purpose.

For the foregoing reasons, a rule upon complainants to show cause why the proceedings should not be quashed and the complaint dismissed is refused.